### ELLIOTT v. HENCK et al.
### No. 12109.

Court of Civil Appeals of Texas. Galveston.
July 14, 1949.

Rehearing Denied Sept. 29, 1949.

Markwell & Stubbs, Galveston, for appellant.

Dibrell, Dibrell & Greer, Galveston, for appellees.

CODY, Justice.

This suit was brought by appellant, a feme sole, to recover the sum of $2,200.00 which she .deposited as earnest money in compliance with the terms of an earnest money receipt to bind the agreement of appellee Cecile Chambers to convey appellant certain real estate for the sum of $22,-000.00, cash.

Appellant brought the suit against both the seller in the earnest money receipt contract, the aforesaid Cecile Chambers, and her agent, the real estate broker in the transaction, Arthur Henck. Appellant's pleadings raised the following issues: (1) that the provision in the earnest money contract to the effect that upon default the earnest money should be retained as liquidated damages, was, under the facts of the case, a penalty provision, and could not be

legally enforced, (2) that the description in the contract was too vague to furnish the means of identifying any specific property, and so was not enforceable, (3) that the contract was drawn by the agent Henck, who was not an attorney, and that such act constituted the unlawful practice of law, and said contract was thereby rendered void and unenforceable.

The court, trying the case without a jury, rendered judgment that appellant take nothing. Thereafter, in response to appellant's request, the court filed conclusions of fact and law. The court found, among other things: That the earnest money receipt was, so far as is here material, as follows:

"Earnest Receipt
"$2,200.00    Galveston, Texas May 5, 1948.
"Received from Mrs. Jessie Elliott Twenty Two Hundred and no/100 Dollars as Earnest Money to close sale to her of all ground as fenced and improvements thereon that we may now have title to, owned or represented by us and known as Number 3114 Boulevard Street, Galveston, Texas, at a total price of $22,000.00. Terms of payment; All Cash of which this Earnest Money is a part.

\*    \*    \*    \*·    .\*    \*

"The sale is to be closed within a reasonable time by seller after title is pronounced good by Attorney for Buyer \* \* \* and Arthur Henck, agent is to receive Five Per cent on 1st $10,000.00 and 2½ per cent on Balance of the sale price as agent's commission.

"Upon default of Buyer to carry out his part of this contract \* \* \* this Earnest Money may then be divided between Seller and Arthur Henck, Agent, which in such cases is hereby agreed to be liquidated damages, or Seller may enforce specific performance of this contract in Galveston, Texas, at his or her option.

\*    \*    .\*    \*    \*    \*

"I accept the foregoing Contract- of Sale:
        "/s/ Arthur Henck, Agent for    ·
            Cecile Chambers
        "/s/ Mrs. Jessie Elliott
            "Approved:
            "/s/ Miss Cecile Chambers."

The court further found, among other things, that at the signing of the earnest money receipt, appellant gave appellee Henck $2,200.00 as earnest money to be applied in accordance with the terms of the earnest money agreement, and that ten per cent of the purchase price is the usual and customary amount deposited as earnest money in real estate transactions in Galveston, Texas. That the Title company advised appellees that it was ready to issue its title policy to appellant. Appellant, however, refused to complete the transaction and demanded the return of the deposit, which was refused. The court further found that appellee Arthur Henck was a notary public for Galveston County; that he was not a licensed attorney; that the earnest money receipt was drawn in his office, and under his direction. The court declined to find Henck himself actually prepared the receipt.

The court further found "By custom and usage the term 'Boulevard' as used in the City of Galveston, is understood to mean the Seawall Boulevard."

The court's conclusions of law, among other things, were to the effect: That because the description in the earnest money receipt was sufficient to enable an abstracter to determine the exact lot and block description by reference to the deed records, the description was not so vague, uncertain and indefinite "as to render it unenforceable under the Statute of Frauds". That the provision that the earnest money should be retained as liquidated damages if appellant defaulted was not a penalty provision. That the illegal act, if any, of Henck did not void the earnest money receipt contract because such illegal act was disconnected from the subject matter of the agreement. However, since Henck was a notary public, his preparation of the agreement did not constitute the illegal practice of law under Art. 430a, Vernon's Ann. Penal Code.

Appellant predicates her appeal upon three points which correspond to the three grounds urged by her below for holding the earnest money receipt illegal. Appellant makes no contention that she did not default, provided the earnest money con-

tract was legally enforceable. We overrule her first point reading: "The provision in the earnest money contract that upon default the earnest money may be divided between seller and the agent is void and unenforceable as a penalty provision, and the appellees having failed to plead or prove actual damages the court erred in not giving judgment to the plaintiff for the return of the earnest money."

In the absence of any stipulation by the parties, the measure of damages for the breach of a contract for the purchase of real estate is of course the difference between the contract price and the market value of the property at the time of the breach. However, it is lawful for the parties, in lieu of such measure of damages, to agree upon a stipulated sum as liquidated damages. And if it appears that the stipulated sum was fairly estimated by the parties, and that the contract was breached in the circumstances contemplated by the parties "the courts will not apply another or different measure of damages." 13 Tex. Jur. pp. 114, 115. The mere fact that the stipulated damages may be in excess of actual damages, does not prevent the stipulation from being lawful, and in the construction of such a contract "as in all others, the intention of the parties must govern." Eakin v. Scott, 70 Tex. 442, 445, 7 S.W. 777, 778. The fact that the parties may designate a contract for a penalty as being a contract for "liquidated damages" will not prevent the court from holding the falsely so-called "liquidated damages" as being a penalty. But, "when it clearly appears from the terms of the contract that it was the intention of the parties thereto that the sum stated should be treated as providing for liquidated damages" such intention will be enforced. Magruder v. Poulton, Tex.Com.App., 257 S.W. 533, 534. "Nor can such agreements be treated as providing for a penalty, and not liquidated damages, if at the time of the execution of the contract the damages which would result from its breach are 'in their very nature uncertain, or their amount indeterminate.'" Id.

Here the parties by the terms of the agreement plainly express the intention that the earnest money shall constitute liquidated damages at the option of the seller. The property here involved is beach-front property. And in the nature of things, the damages which would be sustained by the seller in case the buyer breached the contract either had to be estimated by the parties at the time the contract was executed or by a jury from the evidence at the time of the breach. Here the amount of the damages that would be sustained by the seller by a breach was uncertain in the same sense that the amount of the damages for a breach of a contract for the sale of real estate is generally uncertain.

Appellant contends that the agreement between the seller and her broker for the division of the earnest money in case it was forfeited shows that the provision was intended as a penalty. We disagree with such contention. When the broker procured an enforceable contract of sale for the seller he had earned a right to be compensated for his services by the seller. Had the seller agreed to give him the entire earnest money in the event same was forfeited for the buyer's breach, that would have no effect in changing the intention of the parties that the earnest money should be liquidated damages in case of a breach.

We overrule appellant's second point reading: "The description of the property as contained in the contract in question, is so indefinite, vague, and uncertain as to violate the statute of frauds and render the contract wholly unenforceable, and the court erred in concluding, as a matter of law, that the description was sufficiently definite."

It is well settled that "In so far as the description of the property is concerned the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty." Wilson v. Fisher, 144 Tex. 53, 56, 57, 188 S.W.2d 150, 152. In the case just quoted from the court further stated "The authorities of many states from an early date have held that a description of land by a particular

name by which it is known in the locality is sufficient." Id., 144 Tex. at page 58, 188 S.W.2d at page 153. And the court made it clear that the rule just stated applies in Texas, citing Morrison v. Dailey, Tex.Sup., 6 S.W. 426; Cunyus v. Hooks Lumber Co., 20 Tex.Civ.App. 290, 48 S.W. 1106; Sorsby v. Thom, Tex.Civ.App., 122 S.W.2d 275; Krueger v. W. K. Ewing & Co., Tex.Civ. App., 139 S.W.2d 836. Here, the contract specified that the property was all of the seller's "ground as fenced and improvements thereon that we may have title to, owned or represented by us and known as number 3114 Boulevard Street, Galveston, Texas." "Boulevard" as used in Galveston means the Seawall Boulevard. Thus the description comes within the standard prescribed in the Wilson case, in that the writing furnished within itself the means or data by which the particular property to be conveyed could be identified. From said description the abstracter could determine the exact lot and block description by reference to the deed records.

    ■ Appellant introduced certain ordinances of the city of Galveston which showed that for the purpose of regulating traffic some eleven streets in the city, including the Seawall Boulevard, were designated as boulevards, and with respect to such traffic "boulevards" it was provided that automobiles must come to a stop before entering. This does not militate against the court's finding that the only street in Galveston known as "Boulevard" is the street on the seawall. Indeed, we do not know upon what principle the court admitted the evidence to the effect that there were eleven streets designated as boulevards in the City of Galveston for traffic purposes unless it was because no objection was made thereto by appellees. There was no reference in the contract to traffic regulations, and they could not be imported into the contract for the purpose of making the description which is there certain, uncertain. See Lofstedt v. Gulf Paving Co., Tex.Civ.App., 185 S.W.2d 203, 209; Gulf Paving Co. v. Lofstedt, 188 S.W.2d 155.

    ■ We overrule appellant's third point reading "The contract in question having been prepared by the appellee, Arthur Henck, or in his office under his direction and by a person not a licensed lawyer or a member of the bar is unenforceable, and the appellee Arthur Henck is liable to appellant for the amount of the earnest money as the loss or damage she would sustain if such contract were enforced."

Section 2 of Vernon's Ann. P.C. art. 430a defines the practice of law. Said Act does not purport to prevent a person from attending to and caring for his own business, claims or damages, out of court. And if, as appellant seems to insist, the broker was a direct party to the contract, we would be confronted with the question of whether the Act intended to deprive a person from preparing a contract to which he was a party. But we need not here decide whether the broker was so interested in the subject matter of the contract as to be entitled to draw the contract. Nor need we decide whether, being a notary public, the article does not apply to him because of the proviso reading: "provided that nothing herein shall prevent Notaries Public from drawing conveyances for or without compensation." All of this, because of the construction we place on Section 7 of Vernon's Ann. P.C. Art. 430a, reading: "Sec. 7. Any agreement by any person * * * in violation of this Act shall be illegal and such person * * * shall not be able to recover for any services rendered in violation of this Act, either on the contract or a quasi-contractual obligation. If any person * * * shall, by any act or omission in violation of this Act, *cause* any loss, damage, or injury to any person * * * such person * * * shall be liable in actual damages therefor to any person * * * who sustained any such loss, damage or injury; and such liability shall be absolute and not dependent upon any question or showing of want of skill, care or diligence." (Emphasis supplied.)

No permissible construction of the Section just quoted could render the broker liable to the buyer for the $2,200.00 forfeited by the buyer by her unwarranted breach of the contract. As stated by the trial court the illegal act of Henck in drafting the earnest money receipt (assuming that it was illegal) "was disconnected

from the subject matter of the agreement." In other words, the Act contemplates that there must be some causal connection between the act of unlawful practicing law and a loss that is suffered. Here appellant breached her contract to buy the lot in question. We cannot say that when she is required to make the seller whole, that she has been caused to suffer a loss. But we do not rest our decision upon a bandying of words. If the forfeiture of the earnest money is; properly speaking, a loss suffered by appellant, the loss was caused by her default, not by the act of drafting the earnest money receipt.

We affirm the judgment.