**ROSELAWN CEMETERY, INC., Appellant,**

**v.**

**J. J. MARTIN et ux., Appellees.**

**No. 14584.**

Court of Civil Appeals of Texas.

San Antonio.

May 17, 1967.

House, Mercer, House & Brock, Franklin D. Houser, San Antonio, for appellant.

Tom Stolhandske, James N. Castleberry, Jr., San Antonio, for appellees.

KLINGEMAN, Justice.

This is an action by appellees, J. J. Martin et ux., against appellant, Roselawn Cemetery, Inc., for alleged damages arising out of appellant's breach of contract to sell certain cemetery plots to appellees, and for damages for pain, suffering and mental anguish allegedly arising out of such breach of contract and the burial of another person on one of such plots.

Appellees were the owners of Plots 1, 2 and 3 in Lot 313, and Plot 1 in Lot 314 of Roselawn Cemetery, which were being purchased under a monthly payment plan. Paul Martin, the father of J. J. Martin, was the owner of Plots 1, 2 and 3 in Lot 298, and Plots 1, 2 and 3 in Lot 295. A lot consists of three plots or burial spaces. For better identification of such lots and plots, a map or plat showing the layout of the properties involved is hereto attached. Mrs. Paul Martin was buried in one of the plots in

## LAYOUT OF PROPERTY

Lot 298. In May of 1963, appellees entered into a contract with appellant to purchase two more plots from appellant, being Plots Nos. 1 and 2 in Lot 296, for a consideration of $270.00, or $135.00 a plot, which said plots were also being purchased on a monthly payment plan. Appellees contend that such purchases were made pursuant to a family burial plan which involved their property and that of appellee's father, Paul Martin, and that the reason they purchased the two plots in Lot 296 was that they adjoined the three plots in Lot 295 owned by appellee's father, which would make five plots in a row available for use by Mr. and Mrs. J. J. Martin and their three children. Appellee J. J. Martin testified that while the record title to such plots in Lot 295 was in his father, that they were to be used by his family, and that the four plots in Lots 313 and 314 owned by appellees, were for the use of his brother. In May, 1964, appellees discovered that an unauthorized burial had been made in their newly acquired plots, and it was thereafter ascertained that said two plots had later been sold to a man named Dornstin, and that one of the Dornstin family was buried in one of such plots. Appellant's testimony shows that thereafter appellees were offered other plots, including Plots 2 and 3 in Lot 314, which two plots adjoined those in Lots 313 and 314 owned by appellees, in substitution for the plots sold to Dornstin, but that this was not satisfactory to appellees. Mr. Martin testified that such matter caused him concern, that he took tranquilizers, lost sleep, and became a night eater. Mrs. Martin testified such incident caused her mental pain and suffering and upset her work. She shed many tears, lost sleep, became irritable and cross, and took tranquilizers.

Trial was to a jury, with three special issues submitted:

No. 1. What sum of money, if any, do you find from the preponderance of the evidence will reasonably compensate the Plaintiffs for the loss of the two lots in Block 296?

Answer in Dollar and Cents, or None.

We, the jury, answer: *$825.00.*

In connection with the above and foregoing issue you will take into consideration the following elements and none others:

1. The reasonable market value of the lots at the time they were sold to Mr. Dornstin.

2. The loss of use of said lots to the said J. J. Martin.

No. 2. Do you find from the preponderance of the evidence, if any, that J. J. Martin and his wife, suffered any damage as a result of mental pain and suffering, if any, caused by the Defendant's act of dispossessing them from the two lots in question?

Answer Yes or No: *Yes.*

No. 3. What sum of money, if any, would reasonably compensate J. J. Martin and wife, for such pain and suffering, if any you have so found?

Answer in Dollar and Cents, or None. *$2,000.00*

The trial court ordered a remittitur of $1,750.00, which appellees timely tendered, and judgment was entered by the court for appellees in the sum of $1,075.00.

Appellant contends on appeal that there is no evidence to support the jury's answers to Special Issues Nos. 1, 2 and 3, or any judgment based thereon, and that there is insufficient evidence to support such answers and judgment. Appellant also contends that the trial court erred in allowing any recovery for pain and suffering; in overruling appellant's motion for judgment; in overruling appellant's motion to disregard the jury's answers; and in entering judgment for $1,075.00, because there is no evidence or insufficient evidence to sup-

port such judgment. Appellees, by cross-assignment of error, contend that the order of remittitur was an abuse of the trial court's discretion.

 Appellant concedes the breach of contract and that appellees are entitled to nominal damages, but asserts that there is insufficient evidence to support the jury's answer of $825.00 to Special Issue No. 1. Ordinarily, the measure of damages for breach of contract to sell real estate is the difference between the contract price and the market value of the property at the time of the breach. Elliott v. Henck, Tex. Civ.App., 223 S.W.2d 292, writ ref'd n. r. e.; 17 Tex.Jur.2d Damages § 57 (1960). The only evidence as to the market value of the plots at the time of breach was the evidence that such plots were sold to Dornstin for $165.00 a plot. Even if this is some evidence as to market value, there is still insufficient evidence to sustain the jury's finding of $825.00 in answer to Special Issue No. 1. Appellees in their brief take the position that they have lost the use of five plots, being the two sold to Dornstin and three plots adjacent to them owned by Paul Martin, and that at $165.00 a plot, this would total $825.00. Special Issue No. 1 clearly restricts the amount of damages to the two plots in Lot 296. There is no evidence in the record of any loss of use of such plots to appellees up to the time of breach. The evidence further shows the purchase price of such plots to have been $270.00, which had not yet been paid. Appellant asserts that under the evidence the maximum amount of recovery would have been $60.00, that is, the difference between the contract price, to-wit, $135.00 a plot, and the price paid by Dornstin, $165.00 a plot.

The jury's finding in answer to Special Issue No. 1 is not supported by the evidence and is clearly erroneous. While the trial court did order a remittitur in the amount of $1,750.00, there is no showing as to what proportion, if any, is attributable to the damages found under Special Issue No. 1, and what portion is attributable to the damages found under Special Issue No. 3, and the remittitur does not cure such error. In our opinion, such error requires a remand for a new trial, and in view of such remand, we do not deem it necessary to pass on the other assignments of error of appellant, or the cross-assignment of error of appellees.

The judgment of the trial court is reversed and the cause remanded for a new trial.