**Paul R. SEEGERS et al., Appellants,**

**v.**

**Walter P. SPRADLEY, Appellee.**

**No. 7676.**

Court of Civil Appeals of Texas,
Beaumont.

May 1, 1975.

Rehearing Denied May 22, 1975.

Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellants.

Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

STEPHENSON, Justice.

Plaintiff, Walter M. Spradley, brought this suit against defendants, Paul Seegers and James Lewis, to impress certain real estate with a constructive trust, for specific performance of an oral contract to convey a one-third interest in such real estate and for punitive damages. Trial was by jury, and judgment rendered for plaintiff upon the issues. The parties will be referred to here as they were in the trial court or by name.

The jury, in essence, made these findings: That defendants promised plaintiff he would have an option on this land in exchange for his guaranteeing $100,000 of their loan to purchase the land. That defendants promised that they would sign a written document setting forth the terms of such an option. That such promise should have been expected to induce, and did induce, plaintiff to guarantee the loan. That prior to this transaction there had existed between plaintiff and defendant Seegers a relationship of mutual trust and confidence. That prior to this transaction there had existed between plaintiff and defendant Seegers a relationship of confidentiality. That on or about 1972 defendants first absolutely denied the promise. That defendants did not intend to perform such promise when it was made. That the amount of punitive damages is $275,000. That plaintiff and defendants did agree on all of the material terms of the proposed option.

Defendants' first series of points of error are to the effect that plaintiff could not recover on an oral contract for the sale of land because of the Statute of Frauds. That plaintiff could not recover on the basis of a constructive trust, because there was no evidence to support, insufficient evidence to support, and that the jury findings that the relationship between plaintiff and defendants was one of mutual trust and confidence and one of confidentiality were contrary to the great weight and preponderance of the evidence. In passing upon the no-evidence points, we consider only the evidence favorable to the jury findings, and in passing upon the remaining points, we consider the entire record.

The Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01, V.T.C.A., (1968), reads in part as follows:

"(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

"(1) in writing; and

"(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

"(b) Subsection (a) of this section applies to

\*　　\*　　\*　　\*　　\*　　\*

"(4) a contract for the sale of real estate."

The most recent expression we find from our Supreme Court on this subject is in Meadows v. Bierschwale, 516 S.W.2d 125, 128 (Tex.1974):

"Oakes' first contention is that a constructive trust requiring the defendant to account for profits is an appropriate remedy only when breach of a fiduciary relationship is involved. This is clearly erroneous '[T]he circumstances which give rise to a constructive trust may or may not involve a fiduciary relationship.' Restatement of Restitution § 160, Comment *a* at 641. It is not essential for the application of the constructive trust doctrine that a fiduciary relationship exist

between the wrongdoer and the beneficial owner. Actual fraud, as well as breach of a confidential relationship, justifies the imposition of a constructive trust. Thigpen v. Locke, 363 S.W.2d 247 (Tex.1962); Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951); Pope v. Garrett, 147 Tex. 18, 211 S.W.2d 559 (1948); Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985 (1948); Miller v. Huebner, 474 S.W.2d 587 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.).

*    *    *    *    *    *

"Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. Fitz-Gerald v. Hull, supra; Crumpton v. Scott, 250 S.W.2d 953 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n. r. e.). A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another. Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960); Grand Trunk Western R. Co. v. Chicago & W. Ind. R. Co., 131 F.2d 215 (7th Cir. 1942). See Dobbs, Handbook on the Law of Remedies, § 4.3 (1973). Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted. Magee v. Young, 145 Tex. 485, 198 S.W.2d 833 (1946). See 89 C.J.S. Trusts § 139 at 1020; 54 Am.Jur.Trusts §§ 218, 219, 220. In Magee v. Young, supra, this court, indicating the flexibility of the constructive trust remedy, stated, '[i]n order to satisfy the demands of justice, courts of equity will indulge in presumptions and even pure fiction.' 198 S.W.2d 883 at 885." (516 S.W.2d at 131)

In Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 405 (1960), we find this statement:

"A constructive trust does not, like an express trust, arise because of a manifestation of intention to create it. It is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. It is used, among other things, to adjust rights of partners. The same basic rules, in situations such as we have here, apply to joint venturers."

The plaintiff and two defendants were the only witnesses called to testify as to the issues raised in these points of error. The plaintiff gave the following testimony: He met and became acquainted with defendant Seegers some time in 1963. At the time plaintiff was a member of a law firm and did some legal work for Centex Corporation. Defendant Seegers was an officer for Centex. Plaintiff and defendant Seegers became very close friends during the period of time from 1963 through 1971. They saw each other socially and visited in each other's home. Seegers became a member of an investment club of which plaintiff was a member as a result of plaintiff's proposing his name. They discussed their personal and business affairs and plaintiff had trust and confidence in Seegers and what Seegers told him. Seegers knew plaintiff had been engaged in real estate investment and asked plaintiff to give him as opportunity to join such activities. Plaintiff arranged for Seegers to become a partner with him and others in a partnership known as the Bara Company. Such company was engaged in all aspects of real estate investment. Seegers' contributions to the partnership consisted solely of signing promissory notes individually and as guarantor for the partnership. During the approximately two years Seegers was in the company, there was never a written agreement among the partners.

Plaintiff had a farm and ranch in Hunt County, and he and Seegers had been visiting there. While driving home Seegers told plaintiff that he was very much inter-

ested in getting a piece of farm or ranch land. In November, 1967, plaintiff told Seegers about the availability of the 911 acre tract of land, which is now the subject of this suit. Seegers and plaintiff rode together with a real estate agent to see this land, and Seegers indicated an interest in buying it. The land was owned by an estate being administered by the Trust Department of the Republic National Bank in Dallas. Seegers did not want to pay cash and was informed by the Bank that after allowance for a down payment, the top $100,000 of the note would have to be guaranteed by a responsible person. Seegers told plaintiff about these terms, and plaintiff said he would guarantee the note if defendant would give him an option on a one-third interest in the land. That conversation took place December 11, 1967. Defendant Lewis then came into this transaction and agreed to purchase the land with Seegers, each to own one-half. About December 15, 1967, plaintiff met with Seegers and Lewis and presented to them a letter setting forth the terms of the option he was to have. Seegers and Lewis disagreed with some of the terms and stated their objections, and plaintiff and he agreed to the changes. Later Seegers made handwritten notations on the December 15, 1967 letter setting out all of the changes which were discussed. Seegers and Lewis told plaintiff they would sign an agreement with those changes on it. On December 29, 1967, the transaction was closed. Seegers and Lewis paid a cash down payment, and executed a note for the balance and received a deed to the land. Plaintiff executed a written guarantee agreement as required by the bank. The terms of the option, generally, were to be that it should be for a term of five years, and plaintiff could purchase a one-third interest in the entire tract by paying one-third of the cost, plus carrying charges less any tax benefits received. No written option was executed, and this suit was filed October 13, 1972.

■ The evidence set forth above supports the findings by the jury that the re-lationship between plaintiff and defendants was one of mutual trust and confidence and one of confidentiality. The no-evidence points are overruled.

The testimony given by defendant Seegers was to the effect generally, that he and plaintiff had nothing more than a business relationship. However, such testimony did no more than raise questions of fact for the jury to determine, which it did, favorably to plaintiff. It must be admitted that the relationship between defendant Lewis and plaintiff was of a different nature, but Lewis conceded that Seegers did most of the negotiating with the bank as to the terms of the sale to them, as well as with plaintiff, as to terms of the option. That such negotiations were done with his knowledge, consent and agreement. The remaining points as to these jury findings are overruled.

■ Applying the laws concerning *constructive trusts* as quoted above from *Meadows,* supra, and *Omohundro,* supra, the trial court properly impressed this land with a constructive trust. Defendants holding the title to this land would profit by a wrong and would be unjustly enriched if they were permitted to keep the one-third interest upon which they had agreed to give plaintiff an option. In equity and good conscience plaintiff should be allowed to purchase a one-third interest in this land upon the terms agreed.

Defendants have points of error that there is no evidence and insufficient evidence to support the jury finding that the parties had agreed upon all of the material terms of the option, and that such finding is contrary to the great weight and preponderance of the evidence. We apply the rules set out above in passing upon these points of error.

Plaintiff's letter of December 15, 1967 (mentioned earlier in this opinion), together with handwritten notations made by defendant Seegers, was admitted in evidence. Plaintiff testified at length as to a meeting on that date with defendants. He stated

that Seegers presented the changes in the letter that he wanted to be made, and that plaintiff agreed to the changes. Seegers and Lewis indicated they would sign an agreement with those changes in it. He also stated that there was no further discussion between the parties until after the transaction for the purchase of the land was closed December 29, 1967. Defendant Seegers testified that such a meeting took place in reference to the letter of December 15, 1967. He stated that the notations on the letter were in his handwriting, and covered all of the objections he had at that time. He also testified that plaintiff agreed to all of the proposed changes. He then told plaintiff that if plaintiff would bring him a contract with those terms in it, he would sign it. Defendant Lewis, after examining the letter together with the notation, testified that it was his understanding that if a document containing the terms, as penciled in, was presented to him and Seegers that they would sign it.

■ The primary bone of contention made here by defendants as to the failure to agree on the material terms of the option, concern the meaning of the term "carrying charges" as used in the letter of December 15, 1967. Defendants argue that capital gains tax should be included in computing the carrying charges. The notations on the letter of December 15, 1967, contain a paragraph on the subject of carrying charges including this:

" . . . less an amount equal to federal income taxes which would have been paid by each of you if the carrying charges had been originally paid by me."

The judgment entered by the trial court contained a statement that the parties had stipulated that defendants would furnish the court all of the facts and information necessary for the court to compute the sums to be paid by plaintiff for his claimed interest in the land, in lieu of their producing copies of their federal income tax returns. The judgment then contained the recitation that such information had been furnished and considered by the court, and plaintiff was ordered to pay each defendant a specific amount of money. The formula used by the trial court in arriving at those amounts of money is not set forth in the judgment, but defendants have no points of error complaining about such computation. The points of error as to the jury finding that the parties had agreed upon all of the material terms of the option are overruled.

Defendants attacked the jury finding that they did not intend to perform their promise to give plaintiff an option at the time such promise was made. That finding is essential to allow plaintiff any recovery in this case which is founded upon fraud.

On cross-examination, plaintiff testified that defendants did not tell him anything which was fraudulent other than that they would give him an option and put it in writing.

■■ It is almost Hornbook law that a person's intention is a matter of fact; that the fact may be established by circumstantial evidence taken in connection with the breach, but the breach alone does not establish such fact. Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118, 119 (1943). See also, Medina v. Sherrod, 391 S.W.2d 66, 69 (Tex.Civ.App.—San Antonio 1965, no writ): "Mere proof of nonperformance will not support an inference of fraudulent intent."

■ Plaintiff labored under the burden of establishing, by probative evidence, that defendants had the intent, at the very time they made the promise (in 1967) of refusing to perform the oral agreement. Steine v. Hillcrest State Bank of University Park, 423 S.W.2d 443, 446 (Tex.Civ.App.—Dallas 1967, no writ).

We have made a careful study of the record before us, and there is no evidence to support this jury finding, other than the fact that they did not give plaintiff the op-

tion and put it in writing. Point of error No. 10 is sustained.

Defendants have a series of points of error as to the finding by the jury of $275,000 punitive damages and the award by the court of such damages. It is contended that there is no evidence of any theory upon which punitive damages might be recovered in this case. It is also argued that there is no way to determine whether the amount of punitive damages is reasonably proportionate to actual damages. The points of error also include no evidence, insufficient and great weight and preponderance of the evidence points.

It is recalled that there was no attempt to recover, and no recovery of actual damages in this case. All of the relief sought by plaintiff and granted by the court is in equity except as to the punitive damages. Defendants argue that, at most, plaintiff proved only a breach of contract, and in this State no punitive damages can be recovered in that type of cause of action. It is also argued that in Texas a finding of actual damages is necessary to support recovery of punitive damages.

■ We find defendants' contentions thus summarized to be meritorious. Exemplary damages cannot be recovered for a simple breach of contract which is not accompanied by a tort, even though the breach is brought about capriciously and with malice. A. L. Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S.W.2d 629, 631 (1943). See also, McDonough v. Zamora, 338 S.W.2d 507, 513–514 (Tex.Civ.App.—San Antonio 1960, writ ref'd n. r. e.), wherein the authorities are reviewed with the court concluding that punitive damages may be allowed "if and only if, a distinct tort is alleged and proved, independent of the contract action." We sustain defendants' point No. 38.

■ Moreover, there must be a finding of actual damages before an allowance of punitive damages may stand. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 409 (1934); Montgomery Ward & Co. v. Randio, 419 S.W.2d 407 (Tex.Civ.App.—Beaumont 1967, writ ref'd n. r. e.).

■ It is also the rule in this state that the amount of exemplary damages should be reasonably proportioned to the actual damages found. Southwestern Investment Company v. Neeley, 452 S.W.2d 705, 707 (Tex.1970). There is no finding of actual damages and we have no basis upon which to make the comparison required under the rule laid down in *Neeley*, supra.

■ All of the cases mentioned above were actions in law and not in equity. Plaintiff in the present case could have elected to sue for actual damages, or for specific performance. He could not secure both actual damages at law and specific performance in equity at the same time. Plaintiff elected to pursue his equitable remedy but we are of the view that this—standing alone, in and of itself—should not deny his recovery of punitive damages if the pleadings and the evidence support such damages. International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567 (Tex.1963).

■ The pleadings and proof giving rise to the constructive trust, and the breach of the implied contract to convey the land, must also amount to a wilful tort in order to support an award of punitive damages. There is no evidence of probative force supporting any theory upon which punitive damages can be recovered in this case.

Finding no merit to the remaining points of error, they are overruled. The judgment of the trial court is reformed to deny the recovery of punitive damages and, as reformed, it is affirmed. Appellants shall pay one-half of all costs in all courts and appellee shall pay one-half.

Reformed and affirmed.