**HERITAGE HOUSING CORPORATION,**
**Appellant,**

v.

**Harriet A. FERGUSON, Appellee.**

**No. 05–82–00993–CV.**

Court of Appeals of Texas,
Dallas.

May 3, 1984.

Rehearing Denied July 13, 1984.

See also, Tex.App., 651 S.W.2d 272.

F. Ward Steinbach, R. Scott Steinbach, Dallas, for appellant.

Melvin J. Klein, Dallas, for appellee.

Before AKIN, ALLEN and STEWART, JJ.

STEWART, Justice.

Harriet Ferguson sued Heritage Housing Corporation for specific performance of a real estate sales contract and for damages under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. § 17.50 (Vernon Supp.1984). After a jury trial, the court awarded Ferguson, appellee, specific performance of the contract; $15,000 for loss of use of the house from June 4, 1979,

to date of trial; $6,000 ($2,000 trebled) for loss of use of the house from December 25, 1978, to June 4, 1979; $3,000 ($1,000 trebled) for the difference in the value of the house as promised and the house as built; and $18,000 for attorney's fees. From this adverse judgment, Heritage appeals, asserting twenty points of error, and Ferguson presents seven cross-points. We affirm in part and reverse and render in part for the reasons stated below.

In September, 1978, Harriet Ferguson, entered into a sales contract for a tract of land and agreed to make a small down payment and finance the remainder of the $47,500 purchase price through an FHA mortgage. Ferguson understood from the salesman that her house would be ready by December 25, 1978; in fact, it was May 10, 1979, when Heritage wrote to notify her of its readiness to close. At that time, Heritage also informed her of an error it had made in building the house one foot into the zoned setback and demanded that she sign a waiver of any cause of action that might have accrued from that mistake or from delays in construction. On June 4, 1979, Ferguson tendered payment without signing the waiver, and Heritage refused to close. Ferguson filed suit four days later.

In points of error seven, eight, and nine, Heritage contends that the court erred in awarding both specific performance and monetary damages for loss of use of the house. It first asserts that the correct measure of damages for a breach of contract to sell real estate is the difference between the contract price and the market value of the property at the time of the breach. It maintains that a maximum of $1,500 would be recoverable under this measure of damages and cites as authority *Broady v. Mitchell*, 572 S.W.2d 36, 42 (Tex. Civ.App.—Houston 1978, writ ref'd n.r.e.); *Roselawn Cemetery, Inc. v. Martin*, 415 S.W.2d 442, 445 (Tex.Civ.App.—San Antonio 1967, no writ); and *Elliott v. Henck*, 223 S.W.2d 292, 295 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.). Each of these cases involves a claim for damages *in lieu of* specific performance. Both *Broady* and

*Roselawn* concerned suits for damages where the property to have been purchased had already been sold to a third party. *Henck* involved an earnest money contract in which the buyer forfeited his deposit as liquidated damages. Thus, we distinguish those facts from the case at bar.

Heritage further asserts error in awarding monetary damages in addition to specific performance because the legal remedy of damages is an alternative to specific performance. It claims that the award of $15,000 for loss of use of the house from June 4, 1979, to the date of trial and the award of $6,000 ($2,000 trebled), based on a finding of loss of use of the house from December 25, 1978, to June 4, 1979, are inconsistent with an award for specific performance. Heritage relies on the holding in *Seegers v. Spradley*, 522 S.W.2d 951 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.), for the proposition that exemplary damages cannot be recovered for a simple breach of contract which is not accompanied by a tort, even though the breach is brought about capriciously and with malice. *Id.* at 957. However, Ferguson points out that *Seegers* goes on to say that plaintiff's election to pursue his equitable remedy, "—standing alone, in and of itself—should not deny his recovery of punitive damages if the pleadings and evidence support such damage." *Id.* In *Seegers*, there was no evidence to support a theory upon which punitive damages could be recovered.

Ferguson affirms the contract as being in force and asks that it be performed; thus, the compensation awarded as incident to a decree for specific performance is not legal damages for breach of contract. *Hage v. Westgate Square Commercial*, 598 S.W.2d 709 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); Annot., 7 A.L.R.2d 1204 (1949); 71 AM.JUR.2D, *Specific Performance* § 217 (1973). The rationale for awarding "compensation for delay is that the contract is being enforced retrospectively and the equities adjusted accordingly.... '[E]quity looks upon things agreed to be done as actually per-

formed.' " *Johnson v. Downing and Wooten Construction Co.*, 480 S.W.2d 254 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ). When specific performance of a contract to convey real property is granted, the court will enforce the equities of the parties in such a manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract. That date having passed, the court, in order to relate the performance back to the contract date, equalizes any losses occasioned by the delay by offsetting them with money payments. *Id.* at 258; *see also Claflin v. Hillock Homes, Inc.*, 645 S.W.2d 629 (Tex.App.—Austin 1983, writ ref'd n.r. e.); *Hage*, 598 S.W.2d at 713; 71 AM. JUR.2D *Specific Performance* § 216 (1973). In a suit for specific performance of a contract for the sale of real estate, rental value of the property is recoverable by the purchaser from the time that demand for specific performance and tender of purchase price is made. *Foust v. Hanson*, 612 S.W.2d 251, 253 (Tex.Civ.App.—Beaumont 1981, no writ); *Hage*, 598 S.W.2d at 709; *Kress v. Soules*, 255 S.W.2d 244 (Tex.Civ.App.—Austin, rev'd in part 152 Tex. 595, 261 S.W.2d 703 (1953)); *Slaughter v. Roark*, 244 S.W.2d 698 (Tex. Civ.App.—El Paso 1951, writ ref'd n.r.e.).

▌ In the case at bar, the jury found that Ferguson contracted to purchase a house that was to be finished at a certain time, but it was not. It further found that $2,000 represented the fair rental value of the house from December 25, 1978, to June 4, 1979, and that $15,000 represented the fair rental value from June 4 to the date of trial. June 4 was the undisputed date on which Ferguson tendered the balance of the purchase price and demanded specific performance of the contract. Under these facts, the award of $15,000 is a proper award of compensation for delay in performance. However, because the award of $6,000 ($2,000 trebled) is based upon rental value of the property prior to the time Ferguson tendered performance, she is not entitled to recover this amount as a part of the accounting between the parties inciden-

tal to the grant of specific performance. Thus, we affirm the award of $15,000 for loss of use of the house after the tender of performance and reverse the $6,000 award for such loss prior thereto.

In points of error ten through fifteen, Heritage contends that under the Deceptive Trade Practices Act the trial court erred in trebling the $1,000 found by the jury as the difference in the value of the house as represented and its value as built and in trebling the $2,000 found by the jury as the fair rental value for the house from December 25, 1978, to June 4, 1979, because there is no evidence or insufficient evidence to support any finding that Ferguson suffered any actual damages as defined by the Act. Heritage first asserts that the difference in value of the house as represented and the house as built is not actual damages under the Deceptive Trade Practices Act.

▌ In construction contract cases brought under the Act, actual damages may be based on the cost of repairs or, where correction of defects would require significant changes or expenses, the difference in value of the structure as built and its value if it had been built without defects. *Jim Walter Homes, Inc. v. Mora*, 622 S.W.2d 878, 883 (Tex.Civ.App.—Corpus Christi 1981, no writ); *see also Harrison v. Dallas Court Reporting College, Inc.*, 589 S.W.2d 813, 816 (Tex.Civ.App.—Dallas 1979, no writ). Heritage argues that, under these alternative measures of damage, Ferguson is entitled only to the greater of the two and that, because there is no proof of cost of repairs in evidence, she has not met her burden. We disagree in two respects. Initially we note that, in applying this general rule, plaintiff is entitled to the remedial cost or difference in value, whichever is *less*. *Parr v. Tagco Industries*, 620 S.W.2d 200 (Tex.Civ.App.—Amarillo 1981, no writ). Further, plaintiff has an election of which measure to plead and prove. Here, Ferguson pleaded both measures of damages but chose to prove the difference in value of the house as built and its value

had it been built without defects. If Heritage was dissatisfied with this measure of damages, it had the burden to show that the remedial cost was less than the difference in value. *Parr*, 620 S.W.2d at 206; *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 635 (Tex.App.—Corpus Christi 1981, no writ); *Greene v. Bearden Enterprises, Inc.*, 598 S.W.2d 649 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Because Heritage did not object in the trial court to the submission of this issue as an improper measure of damages, it cannot urge this complaint for the first time on appeal. *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716, 719 (Tex.Civ.App.—Dallas 1979, no writ).

■ Heritage next asserts that, since Ferguson had never actually purchased the house, she neither parted with nor received anything and, therefore, that she has not proved actual damages under the Act. *Id.* at 722. Heritage's reasoning overlooks the fact that the trial court has awarded specific performance of the contract. Ferguson is entitled to receive as actual damages the difference in market value of what she will receive under the judgment and what she contracted for. *Harrison*, 589 S.W.2d at 816. The trial court did not err in trebling this $1,000 difference under the Act.

■ Heritage also contends that the $6,000 ($2,000 trebled) award for loss of the use of the house, based on its fair rental value, is not actual damages under the Deceptive Trade Practices Act. We agree. This award is based on a jury finding that Heritage represented to Ferguson that the house would be completed within a certain period of time when in fact it was not. Ferguson did not plead this representation as a violation of the Deceptive Trade Practices Act but rather as a contractual obligation. She pleaded for damages for loss of use of the house as a consequence of breach of the contract, and she is limited to that theory of recovery. *Kissman v. Bendix Home Systems*, 587 S.W.2d 675, 677 (Tex.1979). We hold that the trial court erred in trebling the $2,000 found to be the fair rental value of the house be-cause Ferguson did not allege and prove that the loss resulted from a violation of the Act. We overrule points of error ten, eleven, fourteen, and fifteen, and sustain points of error twelve and thirteen.

■ Ferguson raises seven cross-points. In cross-points of error three, four, and five, Ferguson asserts error in the trial court's disregarding jury findings that (1) Heritage foresaw or had reason to foresee the rising interest rates, (2) Ferguson was injured by the loss of the favorable mortgage, and (3) Ferguson should be awarded compensation for the loss. She argues that the loss of the favorable mortgage was a consequential damage of the breach of contract, recoverable under the common law rule of *Hadley v. Baxendale*, 9 EXCH 341, 156 ENG Reprint 145 (1854), because it was a foreseeable consequence of the breach. Ferguson cites as authority *Foust v. Hanson*, 612 S.W.2d 251, in which the plaintiff was entitled to damages for increased costs of financing the purchase of land after plaintiff had lost his mortgage commitment due to delay in performance of a contract for the sale of the property. However, in *Foust*, evidence was admitted without objection regarding the amount of money lost over the life of the mortgage due to the increased interest rate based upon a new mortgage commitment at an ascertainable rate at the time of trial. Here, in contrast to *Foust*, Ferguson did not have a current loan commitment. We are not directed to any testimony to show that she would have a new mortgage commitment at any given rate; rather, the testimony was that fifteen and one-half percent was expected to be the current FHA rate. Because testimony in support of the damage issue was based only on hypothetical situations and speculation, there was no probative evidence to support the award of damages for loss of the mortgage; consequently, we overrule Ferguson's cross-points of error three, four, and five.

■ In cross-points six and seven, Ferguson seeks to have us treble the $15,000 award for loss of use of the house from June 4, 1979, to the date of trial and award

a trebling of the amount found to compensate her for loss of a favorable mortgage. TEX.BUS. & COM.CODE ANN. § 17.-50(b)(1) (1973) (amended by Acts 1979, 66th Leg., p. 1329, ch. 603, § 4, effective August 27, 1979). *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977). She claims that Heritage's refusal to close was a part of a deceptive ploy to force her to relinquish her contract on the house in question. However, the alleged "deceptive ploy" that she describes is not a deceptive trade practice as defined in the Act under section 17.46. Breach of contract is not of itself a deceptive trade practice. Ferguson pleaded and proved, as a separate cause of action under the Deceptive Trade Practices Act, that the house was not built as represented. Neither loss of use of the house nor loss of a favorable mortgage is a consequence of that false representation, and Ferguson has not shown that any other deceptive trade practice was a producing cause of these losses, as required by section 17.50 of the Act. Consequently, we overrule cross-points of error six and seven.

Because Heritage's other points of error and Ferguson's other cross-points are not matters that require publication, we have set forth a discussion of those matters in a separate unpublished opinion. TEX.R. CIV.P. 452.

The judgment of the trial court is affirmed in part and reversed in part. We reverse the $6,000 ($2,000 trebled) award against Heritage for loss of use of the house from December 25, 1978, to June 4, 1979, and render a take-nothing judgment as to that award. In all other respects, we affirm the trial court's judgment.