United States Court of Appeals,

Fifth Circuit.

No. 92-1753

Summary Calendar.

ENCLAVE, INC., Plaintiff-Appellant,

v.

RESOLUTION TRUST CORPORATION As Receiver of Sunbelt Federal Savings, FSB, Defendant-Appellee.

March 24, 1993.

Appeals from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, SMITH and WEINER, Circuit Judges.

PER CURIAM:

The appellant, Enclave, Inc. (Enclave), seeks the dismissal of a summary judgment in favor of Resolution Trust Corporation (RTC) allowing them to keep the earnest money paid by Enclave because of its failure to close on the property. Upon review we find that no material issue exists and therefore the summary judgment is affirmed.

FACTS

On April 26, 1990, Vincenzo Barrasso and Sabino Luciano entered into a written contract with Sunbelt Savings Bank, FSB (old Sunbelt) to buy Enclave Valley Ranch Apartments for $9,100,000. The contract provided for $182,000 in earnest money to be deposited with the title company.[1] The parties had also agreed that time was of the essence and included a clause to that

_____

[1]The contract clauses relating to the earnest money state in pertinent part:

3.2 *Earnest Money Deposit.* The Earnest Money Deposit shall be in the amount of ONE HUNDRED EIGHTY-TWO THOUSAND AND NO/100 DOLLARS ($182,000.00).... If the purchase and sale hereunder is consummated, then the Earnest Money Deposit shall be applied to the Purchase Price at the Closing. In all other events, the Earnest Money Deposit shall be disposed of by the Title Company as provided in this Contract.

10.2 *Buyer's Default; Seller's Remedies.*

(a) *Buyer's Default.* Buyer is in default under this if any one or more of shall

effect in the contract.[2]  Barrasso and Luciano failed to meet the closing date of June 25, 1990.  Over the next two years the closing date was postponed nine times by written amendments.  By the Ninth Amendment the earnest money was increased to a total of $451,500 and Enclave had spent $135,878.73 in non-refundable per diem extension fees.  The closing dates came and went while old Sunbelt continually accommodated the buyers with the amendments.  The Ninth Amendment was entered on April 19, 1991 and extended the closing date to May 31, 1991.  The buyers assigned their interest under this amendment to Enclave, Inc. (Enclave).  On April 25 the Office of Trust Supervision of the Untied States Department of the Treasury (OTS) declared old Sunbelt insolvent and appointed the RTC as receiver.  The new institution, Sunbelt Federal Savings, FSB (new Sunbelt) retained all of old Sunbelt's assets including the apartment complex.  Enclave requested a new extension of time from RTC but was refused.  Enclave declared bankruptcy on May 28 and filed an adversary proceeding against RTC requesting an extension.  Enclave also requested the earnest money by arguing that it was an unenforceable penalty.  On September 19, 1991, the parties entered into a stipulation intended to settle the dispute.  Enclave released any and all causes of actions alleged in the proceeding.  The price was lowered to $8,200,000 and that date was extended to November 15, 1991.

On November 13, 1991, Enclave informed RTC that it would be unable to meet the deadline.

occur and remain uncured and unsatisfied for ten (10) days after Buyer's receipt of specific written notice from seller thereof:

(ii) Buyer fails to meet, comply with, or perform in any material respect any covenant, agreement, or obligation on Buyer's part required within the time limits and in the manner required in this Contract;  or

(b) *Seller's Remedies.*  If Buyer is in default under this Contract, Seller may terminate this Contract and receive the Earnest Money Deposit from the Title Company *or* bring an action for specific performance.

(c) *Payment of Earnest Money Deposit.*  Upon the occurrence of any event deemed to be a default by Buyer hereunder, the Earnest Money Deposit shall be forthwith tendered by the Title Company to Seller....

[2]Clause 13.7 provides:

*Time of the Essence.*  It is expressly agreed by Seller and Buyer that time is of the essence with respect to this Contract.

This was the eleventh closing date that appellant failed to meet. On November 15, RTC sent a letter stating that if buyer did not close within ten days, it would be in default. On November 27, the RTC terminated the contract and retained the earnest money. On August 7, 1992, the district court granted RTC's motion for summary judgment.

ANALYSIS

I. *Time is of the Essence.*

The appellants argue that time was no longer of the essence when the Ninth Amendment was written. They go on to contend that because the appellees had given them so many extensions time was therefore not of great consequence. We reject this argument and find that time was of the essence throughout. The amendments all specifically expressed time is of the essence and or alternatively expressed that the buyer would be in default if he did not meet the deadline. The fact that the amendments were carefully constructed time extensions granted for increased earnest money, underscore the premium placed on time.

"Time is always of the essence in any contract when the intention of the parties is clear that it is to be performed on a stipulated date." *NECO Engineering of Texas, Inc. v. Lee,* 487 S.W.2d 185, 187 (Tex.Civ.App. 10th Dist.1972). "Where time is of the essence of a contract, a party must perform in strict compliance within the time prescribed in order to be entitled to any relief." *Id.* at 187. Enclave missed the set deadlines eleven times. It paid $451,000 total in earnest money plus $135,000 in extra extension fees just to buy time. "The fact that parties to a contract have entered into a new agreement extending the time for performance of the contract is evidence that the parties considered time to be material." *Siderius, Inc. v. Wallace Co.,* 583 S.W.2d 852, 864 (Tex.Civ.App. 12th Dist.1979). When time is of the essence is expressed, as in this case, there remains no question of fact for the jury, but is determined by the court as a finding of law. *Id.* at 864. The property was tied up for two years while the appellants failed to close. Not awarding the earnest money as contracted to RTC would reward appellant's procrastination and fail to compensate appellee's good faith negotiations and inability to put up property for sale to bonafide buyers for the period covering the failed contract.

II. *Liquidated Damages.*

Enclave argues that allowing RTC to keep the earnest money is an unenforceable penalty. We reject this argument for two reasons. First, because Enclave specifically waived this claim in the stipulation to end the bankruptcy litigation. Second, the earnest money was agreed to be payment for default in the contract.

The appellant specifically claimed in the bankruptcy litigation that the forfeiture of the escrow funds was unenforceable. This is the identical argument made now and was thus waived by the stipulation. "A release, valid on its face, until set aside, is a complete bar to any later action based on matters covered by the release." *Deer Creek Ltd., v. North American Mortgage Co.,* 792 S.W.2d 198, 2d (Tex.App.—Dallas 1990, no writ). Enclave already waived the claim of "unenforceable penalty" and is proscribed from now asserting it.[3] The release is valid.[4]

If the release was not valid, the liquidated damages would still be proper because it represented a reasonable amount of damages, about 5% of the underlying contract, to compensate RTC for the numerous unmet closings and the accompanying limbo of two years. A liquidated damages stipulation is valid if it is reasonable and the actual damages are uncertain. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952). "Here the amount of the damages that would be sustained by the seller by a breach was uncertain in the same sense that the amount of the damages for a breach of a contract for the sale of real estate is generally uncertain. *Elliott v. Henck,* 223 S.W.2d 292, 295 (Tex.Civ.App.), writ ref'd n.r.e. (1949). "It has been held, time and again, that a provision for liquidated damages in a contract for the sale and purchase of real estate is proper as

---

[3]Enclave's earlier complaint stated in relevant part:

> Seller has suffered no damages or minimal damages as a result of any breach by Enclave and ... forfeiture of the Escrow Fund is an unenforceable penalty.

[4]The release stated in relevant part:

> Further, the Debtor and the principals of the Debtor stipulate and agree that they will release any and all causes of action against the RTC and its predecessors-in-interest that are alleged in the adversary proceedings pending against the RTC and its predecessors-in-interest ancillary to the above-referenced bankruptcy proceeding....

being a transaction in which the damages for the breach thereof are uncertain and not easily estimated with accuracy." *Zucht v. Stewart Title Guaranty Co.,* 207 S.W.2d 414, 419 (Tex.Civ.App.1947). The forfeiture of $451,500 was reasonable for this large contract's closing being postponed 11 times and finally being terminated after two years. The agreed upon earnest money forfeiture is clearly liquidated damages and not a penalty.

## CONCLUSION

For the aforementioned reasons the summary judgment is AFFIRMED.

. . . . .

. . . . .

. . . . .