



# MEMORANDUM OPINION

No. 04-09-00662-CV

Hamlet I. **DAVIS** III and Margaret Jane Davis,
Appellants

v.

Donald V. **LUBY** Jr. and James Donald Morris,
Appellees

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 08-1107B
Honorable Emil Karl Prohl, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:  August 11, 2010

AFFIRMED

This is a case involving a claim for specific performance of a right of first refusal on the purchase of real property. Hamlet I. "Buddy" Davis III and Margaret Jane Davis ("the Davises"), the plaintiffs below, were awarded specific performance; however, their claim for recovery of lost rentals was denied. The Davises bring this appeal, arguing the trial court erred in denying their claim for lost rentals. Donald V. Luby Jr. and James Donald Morris, defendants below, contend the Davises' appeal is frivolous and, therefore, they are entitled to recover appellate

attorney's fees and costs of appeal. We affirm the trial court's judgment, but decline to find the appeal frivolous.

## FACTUAL AND PROCEDURAL BACKGROUND

Luby owned lake-front property located in the Rainbow Lake Subdivision in Kerr County. Luby sold the Davises a portion of the property and, as part of the transaction, Luby and the Davises agreed to impose a right-of-first-refusal restriction upon themselves:

> 2.01 Subject to the terms and provisions of Paragraph 2.06 of this Agreement, neither Davis nor Luby shall ever sell, convey or transfer any part or portion of the Davis Properties or the Luby Properties until the Owner (the "Selling Owner") of the property involved in such proposed sale, conveyance, or transfer has caused a written contract and agreement (an "Offer Contract") to be prepared and executed by the proposed purchaser or transferee of such property setting forth all of the terms and provisions of such sale, conveyance or transfer, including, not by way of limitation, the name of the proposed purchaser or transferee, the part or portion of the Subject Property involved, the terms of payment, whether for cash or credit, and if on credit, the time and interest rate, as well as any and all other consideration being received or paid in connection with such proposed transaction, as well as any and all other terms, conditions, and details involved in such proposed sale or transfer. . . .

> 2.03 The owner receiving such Offer Notice (the "Purchasing Owner") shall have the option and privilege to purchase the part or portion of the Subject Property described in the Offer Notice and Offer Contract upon the same terms and conditions as are set forth in such Offer Notice and Offer Contract, such option to be exercised by the Purchasing Owner giving a written acceptance notice (an "Acceptance Notice") to the Selling Owner within twenty (20) days after receipt of the Offer Notice and Offer Contract. . . .

> 2.06 Notwithstanding the terms and provisions of the foregoing Paragraphs 2.01 through 2.05 of this Agreement, the following types of sales and/or transfers of any part or portion of the Subject Property may be made without the consent of any other Owner of any part or portion of the Subject Property and are exempt from the prohibitions and requirements of such designated Paragraphs, to-wit:

(i) A transfer by virtue of the Last Will and Testament and/or the law of descent and distribution of the State of Texas and which is brought about by the death of an Owner and/or his spouse;

(ii) A sale, or other transfer without consideration, from an Owner and/or his spouse, to a corporation, partnership or similar business entity [that] is wholly owned by such Owner and/or his spouse, children or other direct lineal descendants of such Joint Venturer; or

(iii) A transfer without consideration to a Trust [that] has been created by an Owner and/or his spouse, for the primary benefit of such Owner and/or his spouse, children or other direct lineal descendants of such Owner. . . .

In 2008, the Davises discovered that Luby had sold some of the property subject to this restriction to Morris without the Davises' knowledge. Luby and Morris conceded that they completed the transaction without giving the Davises the opportunity to exercise a right of first refusal as required by the agreement between the Davises and Luby.

The Davises filed suit against Luby and Morris, seeking specific performance of the right of first refusal to purchase the property and, additionally, lost rentals on the property. The trial court granted the Davises' motion for partial summary judgment, finding that the Davises could compel specific performance of the right of first refusal. Thereafter, in a trial before the court, the remaining issues, including the Davises' request for lost rentals, were presented.

At trial, Luby testified that before selling the subject property to Morris, he did not give the Davises the right of first refusal. Likewise, Morris testified that, although he knew the deed conveying the property to him was unenforceable because the Davises had not been given the right of first refusal, he nevertheless proceeded with the transaction and made improvements to the house located on the subject property. Morris testified that before he made improvements to the house, it was filthy and had no air conditioning. Morris disinfected, cleaned, and painted the

house. He also installed new appliances and flooring, and improved the plumbing. According to Morris, he spent about $30,000 in repairs. Also, Morris testified his purchase of the property did not include use of the lake.

Hamlet Davis testified that he was never given the right of first refusal to purchase the property before it was sold to Morris. He also stated that if he had been able to purchase the property, he could have used the property for deer hunting, and he could have rented the house located on the property. According to Davis, he was seeking to recover lost rentals for a period of five and one-half years.

Also during trial, a realtor, Becky Key, testified regarding the rental value of the property in question. After looking at the property and researching other rentals in the area, she estimated the monthly rental value to be $1,050. According to Key, her estimate was based on the condition of the property as it existed at trial — that is, after it had undergone major renovations. Key testified that before the renovations, the rental value was $150 to $200 less than $1,050. In other words, before the renovation, the property could have been rented for about $800 per month. Key testified that included in her estimate was about $500 a year for the value of using the lake.

At the conclusion of the trial, the trial court signed a judgment incorporating its prior order granting the Davises' partial motion for summary judgment. The judgment declared that the deed from Luby to Morris was void and provided that the Davises could purchase the property. Luby and Morris were ordered to pay the Davises' attorney's fees and costs. The judgment also recited that "[a]ll relief not specifically granted herein is denied." Thus, the judgment did not award the Davises any monetary damages for lost rentals. No findings of fact or conclusions of law were requested or filed.

**DISCUSSION**

The Davises now appeal the denial of their request for lost rentals, claiming that there is no evidence supporting the trial court's failure to award such damages and that the evidence established the amount of lost rentals as a matter of law. According to the Davises, they were entitled as a matter of law to fifty-seven months of rental income, totaling $45,600.00. We disagree.

The Davises brought suit seeking specific performance. Specific performance is an *equitable* remedy that may be awarded at the trial court's discretion upon a showing of breach of contract. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied). Specific performance is not a separate cause of action, but rather is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *Paciwest*, 266 S.W.3d at 571; *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). And, although the inadequacy of monetary damages is presumed when a cause of action concerns a written contract for the sale of land, the remedy of specific performance is not a matter of right, but rests in the sound discretion of the trial court. *See Bennett v. Copeland*, 149 Tex. 474, 235 S.W.2d 605, 609 (1951); *United Coin Meter Co. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 887 (Tex. Civ. App.—Fort Worth 1973, no writ).

Because specific performance is an equitable remedy available only when the legal remedy of damages is insufficient, when one brings a breach of contract suit involving the sale of real property, one must elect to sue for either money damages or specific performance. *Byram v. Scott*, No. 03-07-00741-CV, 2009 WL 1896076, at *3 (Tex. App.—Austin 2009, pet. denied); *Shelton v. Poyner*, 326 S.W.2d 583, 585 (Tex. Civ. App.—El Paso 1959, writ dism'd). That is,

when the non-breaching party sues for damages, the party has elected to treat the contract as one terminated by the breach and to seek compensation for that breach. *Byram*, 2009 WL 1896076, at *3; *see Hamon v. Allen*, 457 S.W.2d 384, 391-93 (Tex. Civ. App.—Corpus Christi 1970, no writ). If, on the other hand, the non-breaching party sues for specific performance, then he affirms the contract and requests the court to effectuate the agreement. *Byram*, 2009 WL 1896076, at *3; *see Hamon*, 457 S.W.2d at 391-92.

However, the relief associated with specific performance may include monetary compensation in narrow circumstances – when it is deemed necessary to place the parties in the same position as if the contract had been performed in full. *Byram*, 2009 WL 1896076, at *4; *Heritage Hous. Corp. v. Ferguson*, 674 S.W.2d 363, 366 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). But, this compensation awarded is *incident to a decree for specific performance* and does not amount to legal damages for breach of contract. *Heritage*, 674 S.W.2d at 365. The rationale of such compensation "is that the contract is being enforced retrospectively and the equities adjusted accordingly." *Id.* Thus, "[i]n an action for specific performance, allowances between the parties for rents, profits, delay costs, and like items are not 'damages' as such for breach of contract, but they are a balancing of the equities in the nature of an accounting." *Byram*, 2009 WL 1896076, at *4 (quoting *Hage v. Westgate Square Commercial*, 598 S.W.2d 709, 713 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)).

Because awarding monetary damages incident to a decree for specific performance involves the balancing of equities by the trial court, we review the trial court's decision whether to award such damages for abuse of discretion. *See Byram*, 2009 WL 1896076, at *5. In applying an abuse-of-discretion standard, we consider "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). And, we

defer to the trial court's factual determinations if they are supported by evidence. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). The trial court's legal determinations, however, are reviewed under a de novo standard. *Id.* Further, when no findings of fact or conclusions of law are filed, we infer that the trial court made all fact findings necessary to support the judgment. *Sixth RMA Partners L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).

In this case, the trial court did not award lost rentals incidental to the award of specific performance, and we decline to find that, as a matter of law, it was required to do so. In deciding whether to award the Davises lost rentals, the trial court was required to engage in a balancing of equities. And, in doing so, the trial court had broad discretion in balancing the equities to fashion a remedy. *See Edwards v. Mid-Continent Office Distribs.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied) ("[A] trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief."). Thus, in deciding not to award lost rentals, the trial court could have considered that Morris made major improvements to the property. The trial court could have also considered the fact that Morris testified his purchase of the property did not include use of the lake while the realtor testified that her estimates for rental value did include use of the lake, and concluded such use should not have been included in the realtor's estimate of lost rentals. Because the trial court made no findings of fact and conclusions of law, we must infer that the trial court made all fact findings to support the judgment. Thus, we cannot say that, as a matter of law, the trial court abused its discretion in failing to award the Davises lost rental on the property.

In their brief, Luby and Morris urge that they are entitled to recover damages pursuant to Texas Rule of Appellate Procedure 45 because the Davises filed a frivolous appeal. However, we decline to find the appeal frivolous and deny Luby and Morris's request for damages.

## CONCLUSION

We affirm the judgment of the trial court.


Karen Angelini, Justice