NRG2 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING






 




NO. 03-94-00634-CV







NRG Exploration, Inc., Appellant



v.



Frank E. Rauch, Cleo Rauch, and R & R Resources, Inc., Appellees







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 14,164, HONORABLE DAN R. BECK, JUDGE PRESIDING








 This Court's opinion and judgment of July 12, 1995 are withdrawn, and the
following opinion and judgment are substituted. This oil and gas lease dispute between appellant
NRG Exploration ("NRG") and Frank and Cleo Rauch, appellees, comes before us a second time. 
In NRG Exploration, Inc. v. Rauch, 671 S.W.2d 649 (Tex. App.--Austin 1984, writ ref'd n.r.e.)
("Rauch I"), this Court held that the Rauches wrongfully repudiated NRG's lease but denied
declaratory relief to NRG at that time because the Rauches had granted a second lease that had
been assigned to a bona fide purchaser. NRG subsequently filed the present lawsuit seeking legal
and equitable relief against the Rauches. Following a non-jury trial, the trial court rendered a
take-nothing judgment on NRG's claim against the Rauches. We will reverse the judgment of the
trial court.



BACKGROUND


 On July 14, 1975, the Rauches executed an oil, gas, and mineral lease covering a
371.15-acre tract of land in favor of Shenandoah Oil Corporation (the "1975 lease"). NRG is an
assignee of successors in title to Shenandoah. The 1975 lease provided for a five-year primary
term and an additional two-year term if certain conditions were met. On July 14, 1980, the five-year primary term ended, and all of the conditions for extending the lease two additional years had
been met. However, on September 24, 1980, the Rauches filed suit against NRG's assignor,
Ammex Petroleum, Inc. ("Ammex"), seeking damages and cancellation of the 1975 lease. (1) On
August 4, 1982, after the two-year delay rental period would have expired by its own terms, the
Rauches leased approximately 215 acres of the lands covered by the 1975 lease to K & C
Exploration (the "1982 lease"). (2) 

 Ammex assigned its interest under the 1975 lease to NRG on February 8, 1983,
and the following month, NRG sued the Rauches, claiming that they had interfered with its rights
to drill and explore and seeking a declaration that the 1975 lease was still in effect. The Rauches
asserted a counterclaim, seeking a declaration that the 1975 lease was no longer in effect, and
intervenors Bill Fenn, Inc. and Joe Marie Oil Co. (the "intervenors") requested a declaration that
the 1982 lease was in effect and the 1975 lease was not. On March 18, 1983, NRG obtained a
temporary injunction enjoining Frank Rauch from committing any violent acts or impairing NRG's
right to drill on the property pursuant to the 1975 lease. Pursuant to the temporary injunction,
NRG began preparations for a drill site, expending over $36,000. The trial court heard the case
on the merits on April 28, 1983 and rendered final judgment denying all declaratory and
injunctive relief requested by NRG.

 On appeal of the trial court's judgment in Rauch I, NRG argued that by filing suit
in 1980, the Rauches repudiated the 1975 lease; therefore, the 1975 lease was still in effect. (3) This
Court held that the Rauches had repudiated the 1975 lease and that the lease should remain in full
force and effect as between the Rauches and NRG, but that as between intervenors and NRG, the
lease was terminated because the intervenors were bona fide purchasers. Rauch I, 671 S.W.2d
at 654. The opinion concluded: "[T]he trial court's judgment will not operate as a bar to any
future legal or equitable relief sought against the Rauches by appellant." Id.

 While the appeal in Rauch I was pending, the Rauches filed a lawsuit against NRG,
alleging trespass and interference with property. This Court issued its opinion in Rauch I in May
1984, and NRG filed a counterclaim against the Rauches on August 6, 1984 for fraud and breach
of contract and then an amended answer and counterclaim on February 28, 1992. (4) At the
beginning of the trial, the parties agreed to realign the parties, and NRG proceeded to trial as
plaintiff on its second amended counterclaim. 

 At the close of trial on March 31, 1992, the court took the case under advisement. 
On November 8, 1993, R & R Resources filed an intervention, claiming that it had acquired an
interest in a portion of the leased property in dispute. The trial court allowed the intervention and
reopened the trial on November 16, 1993. Although the court initially rendered judgment
awarding NRG the costs of preparing the drill site, the trial court vacated that judgment. On
September 9, 1994, the trial court rendered a take-nothing judgment against NRG. 



DISCUSSION


 On appeal, NRG raises five points of error, contending that the trial court erred:
(1) in ruling that NRG was not entitled to recover on its claim for breach of contract; (2) in failing
to award NRG damages for the costs of preparing the drill site on the 215-acre tract; (3) in failing
to award NRG damages for the undisputed value of the 215-acre tract; (4) in ruling that NRG's
leasehold interest in the 215-acre leasehold estate had expired; and (5) in ruling that NRG was not
entitled to recover prejudgment interest and attorney's fees.

 In its first point of error, NRG claims that the trial court erred in ruling that NRG
was not entitled to recover on its claim for breach of contract; NRG further contends in its third
point of error that the trial court erred in failing to award it damages for the undisputed value of
the 215-acre leasehold estate. The Rauches respond that NRG was not entitled to recover on its
claim for breach of contract because NRG's rights under the lease had been extinguished. NRG relies on the "law of the case" doctrine to support its contentions. The law
of the case doctrine is the legal principal under which questions of law decided on appeal will
govern the case throughout subsequent stages. Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex.
1986). We disagree that the law of the case doctrine is applicable to the instant case; the doctrine
applies to a single case throughout all of its subsequent stages, including retrial and ensuing
appeal. Houston Endowment, Inc. v. City of Houston, 468 S.W.2d 540, 543 (Tex. Civ.
App.--Houston [14th Dist.] 1971, writ ref'd n.r.e.). Because the instant case involves a different
lawsuit from the one on appeal in Rauch I, the law of the case doctrine does not apply. Instead,
the doctrine of collateral estoppel controls NRG's first and third points of error.

 Whenever a party to a suit attempts to relitigate the same matter that was in issue
and adjudicated in a previous action between the party and its opponent, the doctrine of collateral
estoppel applies. See Tarter v. Metropolitan Sav. & Loan Ass'n, 744 S.W.2d 926, 927 (Tex.
1988). To establish the elements of collateral estoppel, a party must show: (1) the facts sought
to be litigated in the second suit were fully and fairly litigated in the prior action; (2) those facts
were essential to the judgment in the first action; and (3) the parties were cast as adversaries in
the first action. Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex. 1990). The
third element is clearly met; NRG and the Rauches were cast as adversaries in the prior action. 
Therefore, the question of whether collateral estoppel bars the Rauches from relitigating the issue
of breach of contract in the second action turns on the first two elements. 

 The issue of whether NRG was entitled to recover on its claim for breach of
contract was fully and fairly litigated in Rauch I. This Court rejected the Rauches' argument that
the 1975 lease had expired when we held that the 1975 lease was in full effect as between NRG
and the Rauches and concluded that NRG could pursue legal or equitable relief against the
Rauches in the future. In reaching our holding in Rauch I, we relied upon the same facts the
Rauches sought to relitigate in the present action; those facts were essential to the judgment in
Rauch I. We thus conclude that collateral estoppel operates to bar the Rauches from relitigating
the issue of whether they breached the 1975 lease. 

 The Rauches contend that because NRG "could have and should have" brought a
claim for damages in Rauch I, the doctrine of res judicata bars NRG's cause of action for damages
in the instant cause. Res judicata prevents the relitigation of a claim or cause of action that has
been finally adjudicated, "as well as related matters that, with the use of diligence, should have
been litigated in the prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.
1992). We do not agree that the doctrine of res judicata bars NRG's cause of action for damages. 
In Rauch I, NRG did not pursue a cause of action for damages but instead brought a cause of
action solely for declaratory relief. This Court expressly recognized that the trial court's
judgment in Rauch I would not operate as a bar to "any future legal or equitable relief" sought by
NRG against the Rauches. Rauch I, 671 S.W.2d at 654. 

 We thus hold that the trial court erred in ruling that NRG could not recover on its
claim for breach of contract against the Rauches and in failing to award NRG damages for the
value of the 215-acre leasehold estate and render judgment awarding NRG damages for the
undisputed value of the estate in the amount of $43,000. (5) We therefore sustain NRG's first and
third points of error.

 In its second point of error, NRG argues that the trial court erred in failing to
award it damages for the cost of preparing a drill site on the 215-acre tract. On March 18, 1983,
the trial court granted a temporary injunction prohibiting the Rauches from interfering with NRG's
attempts to drill on the lease. On April 28, 1983, the trial court reversed its ruling and rendered
judgment denying all declaratory and injunctive relief requested by NRG. According to NRG,
it incurred over $36,000 in expenses preparing the drill site on the 215-acre tract during the period
between March 18 and April 28, 1983. NRG contends that it is entitled to recover damages for
those costs because it was acting in reliance on the temporary injunction order when it incurred
the expenses. The Rauches respond that NRG incurred the expenses at its own risk after obtaining
the temporary injunction, which was subject to being changed, because it knew or should have
known of an adverse claim by a bona fide purchaser.

 "To be in good faith in developing a tract of land for oil and gas, one must have
both an honest and a reasonable belief in superiority of one's title." Mayfield v. de Benavides,
693 S.W.2d 500, 504 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). When a party enters onto
property and makes improvements with full knowledge of the pendency of an action to enforce
an adverse claim, the party is conclusively considered a trespasser in bad faith. Id. A party's
entry onto land may be determined to be unlawful even if that party obtained a temporary
injunction beforehand. Moore v. Rotello, 719 S.W.2d 372, 377 (Tex. App.--Houston [14th Dist.]
1986, writ ref'd n.r.e.).

 NRG knew of the pendency of an adverse claim when it incurred expenses to
prepare the drill site. Therefore, it did not have an honest and reasonable belief in the superiority
of its title over the title of a bona fide purchaser. The purpose of a temporary injunction is to
maintain the status quo, not to adjudicate a case on the merits. Recon Exploration, Inc. v.
Hodges, 798 S.W.2d 848, 853 (Tex. App.--Dallas 1990, no writ). It was unreasonable for NRG
to rely on the temporary injunction as establishing the superiority of its title. We thus hold that
the trial court did not err in refusing to award NRG damages for the cost of preparing the drill
site and overrule NRG's second point of error. 

 NRG complains in its fourth point of error that the trial court erred in ruling that
its leasehold interest in the 215 acres had expired. According to NRG, when the 1982 lease
expired and the 215-acre tract reverted to the Rauches, the NRG lease should have become
effective again. However, NRG's argument runs head-on into two obstacles. First, the doctrine
of election of remedies bars NRG from recovering both damages for breach of the lease and
specific performance of the lease. See Seegers v. Spradley, 522 S.W.2d 951, 957 (Tex. Civ.
App.--Beaumont 1975, writ ref'd n.r.e.) (holding that plaintiff cannot recover both actual damages
and specific performance of contract); Redding v. Ferguson, 501 S.W.2d 717, 720 (Tex. Civ.
App.--Fort Worth 1973, writ ref'd n.r.e.) (concluding that when party obtains final judgment for
damages, party can no longer demand specific performance of contract). NRG sought damages
for the value of the 215-acre leasehold estate; it cannot recover both damages and specific
performance of the remaining lease term. If the election of remedies doctrine were the only
obstacle, NRG would have the option of electing its remedy: damages or specific performance of
the lease.

 However, a second obstacle bars NRG from electing the remedy of specific
performance of the lease. In Rauch I, this Court held that as between NRG and the intervenors,
the 1975 lease was expired and terminated. As long as the 1982 lease, under which the
intervenors acquired their interest in the leased property, is in effect, NRG cannot recover specific
performance of the 1975 lease. See Rauch I, 671 S.W.2d at 653 ("A bona fide purchaser will
prevail over the holder of a prior equitable title."). 

 NRG contends that the 1982 lease has expired because K & C's assignees ceased
commercial production on the leased property. However, NRG has no standing to request a
determination of whether the 1982 lease has expired because it is neither a party to the 1982 lease
agreement nor a party in interest to the lease agreement. The object of a lease is to secure
development of the leased property for the mutual benefit of the parties to the lease. Garcia v.
King, 164 S.W.2d 509, 512 (Tex. 1942). The 1982 lease had a one-year primary term, extended
for so long as oil or gas was produced. The purpose of the lessors, the Rauches, in executing
such a lease was to have oil and gas produced on the premises and marketed so that they could
receive their royalty under the lease. Id. at 511. They included the production clause so that they
would "not be required to suffer a continuation of the lease after the expiration of the primary
period merely for speculation purposes on the part of the lessees." Id. at 513. 

 It logically follows that the right to terminate a lease based on lack of commercial
production is vested exclusively in the lessor. While NRG argues otherwise, it concedes that
there is no authority for its proposition that a stranger to a lease can seek termination of the lease
based on lack of commercial production. We thus decline to entertain its argument (6) and overrule
NRG's fourth point of error. 

 In its fifth point of error, NRG claims that the trial court erred in ruling that it was
not entitled to recover prejudgment interest and attorney's fees. The Rauches argue that NRG
failed to plead for an award of prejudgment interest and is thus barred from recovery of such. 
See Benavidez v. Isles Constr. Co., 726 S.W.2d 23, 25 (Tex. 1987) (noting that prejudgment
interest must be pled in order to be recovered). However, NRG pled for an award of prejudgment
interest in its third amended pleading. After the trial had begun, NRG filed a motion to allow a
post-trial amendment to assert a claim for prejudgment interest. Although there is no signed order
in the record granting NRG leave to file the amended pleading, the court's ruling is evidenced by
the fact that NRG's third amended pleading was filed on January 5, 1994, the Rauches opposed
the motion in a response dated February 11, 1994, and the first judgment signed by the trial court
dated April 13, 1994 included an award of prejudgment interest to NRG. See Lloyd's of London
v. Walker, 716 S.W.2d 99, 103 (Tex. App.--Dallas 1986, writ ref'd n.r.e.) ("The record here does
not disclose whether leave for either the trial amendment or the amended pleading was granted,
but since it was obviously considered by the court, leave is presumed."). We therefore sustain
NRG's fifth point of error with regard to prejudgment interest.

 With regard to the issue of attorney's fees, we overrule NRG's fifth point of error. 
Section 38.001 of the Texas Civil Practice and Remedies Code entitles a party to recover
reasonable attorney's fees from an individual or corporation if the claim is for an oral or written
contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1986). However, in order to
recover attorney's fees under section 38.001, the party must comply with the requirements of
section 38.002, which requires the claimant to present the claim to the opposing party. Id.
§ 38.002. The Rauches contend that NRG is not entitled to recovery of attorney's fees because
it failed to meet the prerequisites for recovery set out in section 38.002, and NRG concedes that
there is no evidence of presentment in the record. We thus hold that NRG is not entitled to
recovery of its attorney's fees. (7)



CONCLUSION


 The trial court erred in ruling that NRG was not entitled to recover on its claim for
breach of the 1975 lease, in failing to award NRG damages for the value of the 215-acre leasehold
estate, and in ruling that NRG was not entitled to recover prejudgment interest. We thus reverse
the trial court's judgment and render judgment that NRG recover $43,000 in actual damages,
prejudgment interest on that amount at the rate of ten percent per annum from September 24,
1980 (8) through the date of this judgment, and post-judgment interest at the maximum legal rate
from the date of this judgment until paid. See Tex. R. App. P. 81(b)(3) (requiring appellate court
to render such judgment as trial court should have rendered, except when necessary to remand to
court below for further proceedings).



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and Jones


Reversed and Rendered


Filed: August 16, 1995


Publish

1.   The Rauches took a voluntary nonsuit in this lawsuit on October 13, 1982.
2.   This 215-acre leasehold estate is the subject of the present lawsuit.
3.   NRG argued that because the Rauches repudiated the lease by filing the lawsuit, the
period of time between the filing of the 1980 suit and the taking of the nonsuit should be
excluded from the running of the two-year delay rental period. 
4.   This lawsuit is the subject of the present appeal.
5.   The value of the leasehold estate was established by two different witnesses who
testified that the 215-acre tract had a value of not less than $200 per acre. Thus, NRG's
damages are 215 times $200, which amounts to $43,000.
6.   Where an appellant cites no authority in support of a point of error, the court
should overrule the point of error. Teague v. Bandy, 793 S.W.2d 50, 58 (Tex. App.--Austin
1990, writ denied).
7.   Because of our disposition of NRG's points of error, it is unnecessary to address R
& R Resources's cross-points.
8.   As a matter of law, the date of repudiation has been established as September 24,
1980. See Rauch I, 671 S.W.2d at 651-53.