SMALLWOOD et al. v. FIRST STATE BANK OF OVALO. (No. 956.)

(Court of Civil Appeals of Texas. El Paso. April 24, 1919.)

1. SALES ☞121 — RESCISSION — ALLEGING SINGLE GROUND.

Where buyers of cattle did not undertake to rescind upon ground of breach of implied warranty of title, in that there was an existing chattel mortgage lien on the cattle, but solely upon the ground that the cattle were not free from tick fever, the right to rescind for breach of warranty of title falls.

2. SALES ☞384(4)—CARE OF STOCK LEFT IN SELLER'S POSSESSION—BUYER'S LIABILITY.

Where buyers of cattle refused to complete payment and left the cattle in seller's pasture in need of immediate care, there was an implied understanding that the seller should look after the cattle and feed and water them, and the buyers were liable to seller for so doing.

3. SALES ☞383—CARE OF STOCK SOLD—EVIDENCE.

Upon a seller's claim against buyers for feed and care given to cattle sold, for which buyers refused to pay, it is not sufficient to show that seller paid a stated amount for feed used and services rendered, but the evidence must show the necessity therefor and that the amount charged was reasonable.

Appeal from District Court, Taylor County; Joe Burkett, Judge.

Suit by the First State Bank of Ovalo against J. M. Smallwood and others, in which the defendant Smallwood set up a lien against certain cattle alleged to have been sold to the other defendants by reason of feed, pasturage, water, and care furnished for said cattle. Judgment for plaintiff Bank and in favor of the other defendants against Smallwood on his claim of lien, and defend-ants appeal. Judgment for the Bank affirmed and judgment against Smallwood on cross-action reversed and remanded.

Dallas Scarborough, of Abilene, for appellants.

J. M. Wagstaff, of Abilene, and B. L. Russell, of Baird, for appellee.

WALTHALL, J. The First State Bank of Ovalo, Tex., brought this suit against J. M. Smallwood, John Driskill, and H. E. Dunlap, alleging that Smallwood, on the 4th day of October, 1917, executed and ·delivered to plaintiff bank his note in the sum of $3,500, due January 3, 1918, providing for interest and attorney's fees, and to secure same, executed to said bank a chattel mortgage on 157 head of stock cattle, describing same; that said mortgage was duly filed for .record on October 6, 1917; that Smallwood sold said cattle to Driskill and Dunlap, who, in part payment therefor, executed and delivered to Smallwood their two checks on the Home National Bank of Baird, Tex., one dated the 12th day of October, 1917, in the sum of $150, and one dated the 13th day of October, 1917, in the sum of $4,816; and that Smallwood indorsed and delivered said two checks to plaintiff bank, the owner and holder of said note. The bank alleged the presentation for payment of said checks to the Home National Bank, and that payment was refused. The suit was to recover on the note, and the value of the said checks, and foreclosure of the chattel mortgage.

Smallwood answered, admitting the execution of the note and the chattel mortgage on said cattle, the sale of the cattle to Driskill and Dunlap for a certain automobile of the value of $650 and said two checks described in the bank's petition; that he counted out said cattle to Driskill and Dunlap, who accepted said cattle and issued said checks in payment therefor; that after accepting said cattle, delivering said automobile, and issuing and delivering to him said two checks, Driskill and Dunlap stopped the payment upon said checks and refused further to carry out their purchase of said cattle, and refused to take said cattle from his (Smallwood's) pastures, where same then were; that, acting with diligence, care, and caution, and to save and reduce the damage to said cattle, he watered, fed, and cared for said cattle, and in doing so has incurred a necessary and reasonable expense in the sum of $1,700; that the sale of said cattle was a cash sale. He alleged that by reason of the facts he had a lien on said cattle, and prayed judgment for foreclosure of his lien to satisfy the said checks, for the value of the automobile, feed, pasturage, ·water, care, etc., of said cattle. Driskill and Dunlap answered to the merits, denying actual knowledge of the Smallwood

mortgage on said cattle to the bank; denied ownership of the cattle; alleged that they and Smallwood were negotiating a trade for said cattle; that they saw the cattle in the Smallwood pastures, discussed with Smallwood the purchase of the cattle, agreed on the price, delivered to Smallwood as earnest money the smaller of the two checks sued on, and later delivered to Smallwood the other check and the automobile; that at the time of the negotiation of said purchase, and at the time said cattle were counted out to them, Smallwood represented to them that said cattle were ticky cattle, and were what is known as safe cattle, and cattle that could be placed in ticky pastures, and that they would not fever, but that said cattle had been raised in Coleman county and pastured therein, and were not what is known as clean cattle, and that same would not fever if placed in ticky pastures and exposed to ticks, and that the cattle were free from liens; that they relied on the statements, and so gave said checks;' that the day following they found a number of the cattle sick and some dying, and a number sick with fever caused from being in ticky pastures; that immediately on discovering the facts stated and that the representations made were false and fraudulent, they at once rescinded said contract of purchase, stopped the payment of said checks, and notified Smallwood that they would not receive the cattle, would not pay the checks, and demanded same and said automobile.

To Smallwood's cross-action they 'pleaded the same facts, and denied their liability to Smallwood for caring for the cattle.

The cause was tried without the aid of a jury, and the court entered its judgment in favor of plaintiff bank against Driskill, Dunlap, and Smallwood jointly and severally for $5,077.63 with 6 per cent. interest thereon from date of judgment. Judgment was against Smallwood for $4,010.40 with foreclosure of the chattel mortgage as to Smallwood, Dunlap, and Driskill, with direction that order of sale first issue as to said cattle, and when sold the proceeds be applied to the payment of the bank's judgment, for the foreclosure of its lien for $4,010.40, and the balance, if any, paid to Dunlap and Driskill; that the said sum of $4,010.40, when collected, be applied on the judgment for $5,077.63; that Dunlap and Driskill take nothing by their cross-action against the plaintiff bank and Smallwood, seeking to cancel the said checks; that Dunlap and Driskill recover of Smallwood and the plaintiff bank the right, title, and interest in and to the said cattle, subject to the conditions of the judgment; that Smallwood recover of Dunlap and Driskill the sum of $650, the value of the automobile, with interest, but take nothing on the expenses incurred in feeding and attending the cattle.

The trial judge made and filed findings of fact, which we think are supported by the evidence, and so adopt them as our own. Abbreviated, the findings are as follows:

(1) On the dates above stated Smallwood was the owner of the 157 head of cattle described, and on the dates stateu executed the note to the plaintiff bank and secured same by the chattel mortgage on said cattle.

(2) On the dates stated Smallwood sold the cattle, except one steer, to Dunlap and Driskill for $5,616.00, paid by the delivery to him of one automobile of the value of $650 and the two checks above described; that said cattle were counted out and accepted by Dunlap and Driskill and left in the Smallwood pastures in the possession of Smallwood.

(3) On the day following the sale of the cattle Dunlap and Driskill repudiated the purchase of the cattle, took the automobile from Smallwood and converted same to their own use, and refused payment of the said two checks, and notified Smallwood that they would have nothing more to do with said cattle. They claimed to Smallwood that they had learned that the cattle had Texas fever, and claimed to Smallwood that he had represented to them that the cattle were safe cattle from Texas fever, and that the cattle were not safe cattle, and that they would not have the cattle and would not pay the checks in question.

(4) Twenty-seven head of the cattle died within a few days after the sale to Dunlap and Driskill. They did not have the Texas fever and were safe cattle against the Texas fever. Smallwood represented to Dunlap and Driskill that the cattle were safe from Texas fever and same was true.

(5) Smallwood indorsed the said two checks to the plaintiff bank, who is now the owner thereof. Plaintiff bank did not release its mortgage lien on the cattle. The plaintiff bank was not an innocent purchaser of the said two checks for value.

(6) Dunlap and Driskill were not justified in repudiating their purchase of the cattle. Smallwood has kept the cattle in his possession, and now has them. When left in his possession, they were poor and badly needed feed and attention. Smallwood gave to said cattle all proper care and attention. Such care and attention, including feed, water, pasturage, and personal attention, such care and attention as he gave the cattle, were reasonable and necessary, and in so caring for the cattle Smallwood incurred an expense of $1,675, which Dunlap and Driskill refused to pay.

(7) The automobile given by Dunlap and Driskill to Smallwood as part of the purchase price of said cattle had a value of $650. Dunlap and Driskill took the automobile from Smallwood and converted same to their own use.

(8) The feed, water, pasture, and attention

given- said cattle by Smallwood were necessary and reasonable and inured to the benefit of Dunlap and Driskill. Smallwood, Dunlap, and Driskill have perfected appeals.

[1] Driskill and Dunlap urge one assignment to the effect that the judgment of the court is contrary to the law and the evidence, in that the undisputed facts show that the cattle in controversy were sold to them by Smallwood free from liens and incumbrances, and the undisputed proof shows that there was a mortgage on the cattle and foreclosed in this suit by the plaintiff bank, and that therefore they had the right to refuse to take said cattle and refuse to pay the two checks sued upon. The contention is that, by reason of said mortgage and having paid full price for same, an implied warranty of title arose as a matter of law, and they, the buyers, had the right to refuse to take the cattle, and had the right to refuse to pay said checks.

There was a chattel mortgage lien on the cattle in favor of the plaintiff bank at the time of the sale to Dunlap and Driskill. The trial court made no finding as to the existence of the lien being a condition of the sale. The evidence is conflicting as to the understanding between the parties. Smallwood testified that the question of the lien to the bank was not discussed, but that it was his intention to pay it off with the proceeds of this sale. The record shows that the two checks were turned into the bank holding the lien with the understanding that the bank retain the amount for which the lien stood, and there is no contention that Driskill and Dunlap undertook to rescind the sale upon this ground, but solely upon the ground that the cattle were not free from tick fever, and the trial court found that the cattle were free from tick fever; so that, since the reason given for the attempted rescission of the sale and the stopping of the payment of the checks did not exist, the right to rescind falls. Neither the facts found by the trial court nor the evidence show fraud or misrepresentation of material facts practiced by the seller in making the sale. The evidence seems clear that as to the cattle themselves, and as to their surroundings at the time of the sale, Dunlap and Driskill had full opportunity to know all the facts, had opportunity to inspect the cattle and the pastures in which the cattle then were, and that they did inspect and in buying the cattle they bought on their own judgment.

We have concluded that, under the facts shown, Dunlap and Driskill did not have the right to rescind the purchase.

[2] The court refused Smallwood a recovery for the amount he had expended in keeping and caring for the cattle after Dunlap and Driskill had undertaken to rescind their purchase, and stopped the payment of the two checks. The trial court concluded that Smallwood was liable to the plaintiff bank as

indorser on the checks, that the items of expense and service in caring for the cattle were necessary and reasonable, but refused him recovery on the ground that Dunlap and Driskill, nor any one of them, had authorized Smallwood to feed and care for the cattle, and that Smallwood was a volunteer in feeding and caring for the cattle; that he should have relied on his contract of sale of the cattle.

Smallwood was left in possession of the cattle by Dunlap and Driskill, they refusing to take them out of the Smallwood pastures, notifying Smallwood that they would have nothing more to do with the cattle, and denied their liability on the checks given in payment for the cattle. Smallwood had given a mortgage on the cattle to the plaintiff bank, and was personally liable thereon for its discharge. He indorsed to the bank the checks given and was liable thereon. While the sale was a cash sale, by accepting the two checks in payment for the cattle, Smallwood waived the condition of cash, as he could do, and considered the sale as complete by the payment of the checks. It possibly was his duty to minimize the damages he would reasonably sustain if the cattle were not cared for. We take the view that by leaving the cattle in Smallwood's possession and with the notice to him that Dunlap and Driskill would have nothing more to do with the cattle, and in view of the condition of the cattle and their extreme need of immediate care, and Smallwood being the seller of the cattle, and having a right to have applied to the payment of the mortgage lien, and the payment of the two checks, the full value of the cattle, there was an implied understanding, if not a direct request and demand, that Smallwood should look after the cattle, feed and water them. Such an understanding grows out of the very condition of the facts shown. There was a contractual duty with respect to the cattle Dunlap and Driskill owed Smallwood which they declared they would not discharge; that is, take the cattle and have the money in the bank to meet their payments when the checks were presented for payment. By leaving the cattle in Smallwood's possession they impliedly said to Smallwood, Take the cattle and make them pay our debt to you, and discharge your debt to the bank. Smallwood was not a stranger to the transaction that put him in possession of the cattle, and put upon him the duty he then assumed in caring for them. By caring for the cattle Smallwood was not intruding himself into matters which did not concern him; he had an interest to protect in caring for the cattle. We think he was not a volunteer. 40 Cyc. p. 222; Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L. R. A. (N. S.) p. 334.

[3] It is insisted that the evidence is insufficient to show the necessity for and the

reasonableness of the expenses incurred by Smallwood in caring for and feeding the cattle. We think this ground of error as to the expense account is well taken, and for that reason the case must be reversed. It is not sufficient simply to show that Smallwood had paid a stated amount for the feed used and the services rendered. The evidence must go further, and show the necessity for it, and that the amount charged is reasonable. Wheeler v. Tyler S. E. Ry. Co., 91 Tex. 356, 43 S. W. 876.

The judgment in favor of the bank is affirmed. The judgment against Smallwood on his cross-action is reversed and remanded for trial on its merits, as above indicated.