# Supreme Court of Texas

No. 23-0868

White Knight Development, LLC,

*Petitioner*,

v.

Dick B. Simmons, Sr., and Julie M. Simmons,

*Respondents*

On Petition for Review from the
Court of Appeals for the Tenth District of Texas

**Argued March 18, 2025**

JUSTICE HUDDLE delivered the opinion of the Court.

It is black-letter law that specific performance is an equitable alternative to legal damages. That is, a court may fashion a remedy including one or the other but not both. In this case, one party to a contract for the sale of real property breached, and the other sought specific performance and various categories of damages. The question we must answer is whether the trial court erred by awarding specific performance *and* a monetary award it described as "actual

damages/consequential damages" related to the delay in performance. It did, in part.

We hold that, while an award of specific performance usually precludes a monetary award, there is a narrow set of circumstances in which a breach of a contract for the sale of real property may be remedied by specific performance and a monetary award of reasonable, foreseeable expenses directly traceable to the delay in performance and, in cases where the purchaser breaches, incurred in connection with the seller's care and custody of the property during such delay. This monetary award is an equitable one, the purpose of which is to restore the party seeking specific performance to the position it would have occupied had the other party's performance been timely by reimbursing it for property-related expenses incurred as a direct result of the delay between the time of the breach and the time of judgment. The court of appeals erred by deleting the judgment's monetary award entirely without distinguishing recoverable expenses from those that were unrecoverable because they were insufficiently tethered to the subject property and the delay in performance. Accordingly, we reverse the court of appeals' judgment in part and remand the case for that court to review the monetary award consistent with the principles we announce today.

## I. Background

In 2015, White Knight Development, LLC executed a contract to purchase land in a Bryan subdivision from Dick and Julie Simmons for $400,000. The property had been subdivided subject to restrictions, including set-back requirements, and residents voted to extend the

2

restrictions, such that they would be effective until January 1, 2016, with the potential to extend them further if residents voted accordingly by January 1, 2018.

White Knight became concerned that the restrictions could interfere with its plan to develop the property. So the parties agreed to amend the contract to include a "buy-back" provision, giving White Knight the option to require the Simmonses to repurchase the property if residents again voted to extend the restrictions. It provides:

> **2. "Buy Back" agreement**. In return for valuable consideration, Seller agrees that if any of the Restriction concerns . . . are reinstated at any time prior to January 1, 2018, Buyer has the option (but not the obligation) to demand that Seller repurchase the Property. If Buyer exercises this option, Seller shall be required to repurchase the Property for the purchase price stated in the Sale Contract, minus any unpaid balance owed by Buyer under its promissory note with Seller within a 45 day period after this "Buy Back" agreement is requested to be executed.

The sale closed in May 2016, with White Knight paying the $400,000 purchase price in exchange for the property deed.

White Knight's concerns proved well-founded when the residents voted to extend the restrictions in October 2016. So White Knight invoked the buy-back provision for which it had bargained, giving the Simmonses until December 23, 2017, to repurchase the property at the $400,000 sales price. But the forty-five-day period came and went, and the Simmonses refused to buy back the land.

White Knight sued for breach of contract and fraudulent inducement of a real estate contract (and other theories), seeking both specific performance of the buy-back provision and "damages incurred

3

as a result of [the Simmonses'] conduct, including but not limited to, fees charged by banks or other financial institutions (including extension fees), taxes, interests, and other costs." The Simmonses responded that a condition precedent to the buy-back provision—extension of the property restrictions—never occurred because those restrictions had expired. They counterclaimed for a declaration that the restrictions are invalid.

The case was tried to the bench. White Knight presented evidence that it suffered financial setbacks it attributed to the Simmonses' breach. It originally financed its purchase of the Simmons property with a loan from MidSouth Bank. After the Simmonses refused to repurchase, White Knight defaulted on the MidSouth loan and paid a forbearance fee to avoid foreclosure. It took out a second loan to pay MidSouth, using the Simmons property and an unrelated property as collateral. After defaulting on the second loan, White Knight took out a third loan to refinance the unrelated property and pay off the note on the Simmons property. White Knight later transferred title in the unrelated property to the second lender to avoid foreclosure. All throughout, it paid property taxes and loan interest using a company credit card. There was testimony that "White Knight's business essentially has come to a screeching halt" and the company is no longer functioning "in any capacity."

The trial court found the Simmonses breached the contract. In so doing, it concluded that the Simmonses were precluded from asserting there were no valid restrictions on the property under the doctrine of quasi-estoppel. The trial court awarded White Knight specific

performance of the buy-back provision, ordering the Simmonses to repurchase the property for $400,000. It also awarded White Knight $308,136.14 in "[a]dditional actual damages/consequential damages" for various costs incurred during the three-and-a-half year period from the date of breach (December 23, 2017) to trial.[1] It itemized the monetary award in its findings of fact and conclusions of law:

- $103,667.73 for expenses "related to" the Simmons property, including property taxes, forbearance and refinancing fees, and interest payments for the MidSouth loan and the two other loans it acquired to avoid defaulting on the MidSouth loan;

- $45,619.83 for property taxes owed in 2020 ($4,862.23 for the Simmons property and the rest for other properties);

- $8,211.57 in penalties related to past due property taxes for 2020 ($875.20 for the Simmons property and the rest for other properties);

- $59,318.00 in "operating loan interest" for White Knight "to continue business";

- $74,802.00 in "loan interest related to another property that had to be refinanced to avoid foreclosure of" the Simmons property; and

- $16,518.00 in "credit card interest" for White Knight to "continue business."

The trial court found that—due to the Simmonses' breach—White Knight had to extend its financing with MidSouth Bank, pay a forbearance fee to avoid foreclosure, and secure financing from additional lenders. Finally, it found that White Knight's "credit was

---

[1] The trial court further awarded White Knight attorney's fees, costs of court, and pre- and post-judgment interest.

5

damaged" and it "suffered significant additional expenses due to other projects that were not able to be completed due to continued expenses."

Both parties appealed. White Knight contended that the trial court erred by not finding in White Knight's favor on its fraud claim, which was not addressed in the trial court's judgment. The Simmonses presented several issues, including a challenge to the quasi-estoppel finding and the awards of both specific performance and damages.

The court of appeals modified the judgment to delete the $308,136.14 monetary award but otherwise affirmed. 703 S.W.3d 136, 150 (Tex. App.—Waco 2023). The court acknowledged a principle we embrace today: that monetary compensation may be awarded alongside an award of specific performance "in narrow circumstances—when it is deemed necessary to place the parties in the same position as if the contract had been performed." *Id.* at 149 (quoting *Davis v. Luby*, No. 04-09-00662-CV, 2010 WL 3160000, at *4 (Tex. App.—San Antonio Aug. 11, 2010, no pet.)). But the court of appeals then went in search of an express statement by the trial court that the monetary award was equitable in nature. Finding none, it concluded that White Knight was not permitted to "receive relief in the form of specific performance of the contract and then also receive damages for its breach." *Id.*; *see also id.* (finding noteworthy the absence of any "indication in the findings or judgment that the amounts the trial court awarded to White Knight were to adjust the equities so that the parties were put in the position in which they would have been had the transaction been closed as contemplated").

6

We granted White Knight's petition for review.[2]

## II. Relevant Law

### A. Standard of review

We employ dual standards of review in this case. The threshold question—whether it is permissible to award certain monetary relief alongside equitable relief in the form of specific performance—is a legal one we answer de novo. *See Credit Suisse AG v. Claymore Holdings, LLC*, 610 S.W.3d 808, 819 (Tex. 2020). By contrast, "the nature and contours of an equitable award are within trial court discretion." *Id.*; *see also Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008).

### B. Specific performance

"Specific performance is an equitable remedy that may be awarded for breach of contract" as an alternative to legal damages. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 887 (Tex. 2019); *see also Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 707 (Tex. 2019) ("Damages and specific performance are alternatives to one another."). Specific performance is not a separate cause of action but rather a substitute for monetary damages when such damages would be inadequate. *Ifiesimama v. Haile*,

---

[2] The Simmonses did not file their own petition for review challenging the court of appeals' judgment or, more specifically, its conclusion that the Simmonses were estopped from arguing that the restrictions are invalid. We therefore do not address this argument. *See* TEX. R. APP. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review."); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 587 (Tex. 2017) ("[A]n issue raised for the first time in a respondent's brief on the merits is waived in the absence of a petition for review.").

522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 423 (Tex. 2011) (concluding that specific performance was foreclosed because "an adequate remedy at law exists").

A party recovering for breach of contract must elect to seek either legal damages or specific performance. *Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.—Dallas 2013, pet. denied). If the party seeks legal damages, it "has elected to treat the contract as terminated by the breach and to seek compensation for that breach." *Id.* Conversely, a party seeking specific performance rather than damages "affirms the contract and requests the trial court to effectuate the agreement." *Id.* Whether a plaintiff seeks legal damages or specific performance, the goal is to put the plaintiff back to the position it would have been in had there been no breach. *See MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 106 (Tex. 2023); *Goldman*, 414 S.W.3d at 361–62. Contract law precludes the nonbreaching party "from recovering damages for breach of contract that would put [it] in a better position than if the contract had been performed." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 113 (Tex. 2018) (quoting *Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *19 n.22 (Tex. App.—Austin Jan. 10, 2007, no pet.)).

## C. Reimbursement of Expenses Incident to Specific Performance

Our courts of appeals have consistently held that a court "may order, in addition to specific performance, payment of expenses incurred

8

by plaintiffs as a result of a defendant's late performance." *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 575 (Tex. App.—Fort Worth 2008, pet. denied).[3] This remedy has been permitted only "in narrow circumstances—when it is deemed necessary to place the parties in the same position as if the contract had been performed in full." *Goldman*, 414 S.W.3d at 361–62. An award of this nature "is not considered breach of contract damages, but rather 'equalizes any losses occasioned by the delay by offsetting them with money payments.'" *Paciwest*, 266 S.W.3d at 575 (quoting *Heritage Hous. Corp. v. Ferguson*, 674 S.W.2d 363, 366 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)). The underlying rationale "is that the contract is being enforced retrospectively and the equities adjusted accordingly." *Goldman*, 414 S.W.3d at 362 (quoting *Heritage Hous.*, 674 S.W.2d at 365). In other words, a monetary award may be appropriate when specific performance alone does not restore the nonbreaching party to the position it would

---

[3] *See also TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 771 (Tex. App.—Tyler 2018, pet. denied) (holding the trial court could properly award "'delay damages' for lost profits, the difference in interest rates, and attorney's fees" in addition to specific performance); *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *14, *17 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (affirming an award of monetary compensation in addition to specific performance); *Byram v. Scott*, No. 03-07-00741-CV, 2009 WL 1896076, at *4–5 (Tex. App.—Austin July 1, 2009, pet. denied) (noting trial courts have broad discretion to balance the equities by awarding monetary compensation in addition to specific performance); *Heritage Hous. Corp. v. Ferguson*, 674 S.W.2d 363, 366 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (affirming an award of compensation for the delay in performance in addition to specific performance); *Claflin v. Hillock Homes, Inc.*, 645 S.W.2d 629, 635–36 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (affirming an award of specific performance alongside costs incurred due to the defendant's delay); *Foust v. Hanson*, 612 S.W.2d 251, 253–54 (Tex. App.—Beaumont 1981, no writ) (same).

have occupied if the contract had been performed *at the time it was to be performed*:

> A decree for specific performance seldom brings about performance within the time that the contract requires. In this respect, such a decree is *nearly always a decree for less than exact and complete performance.* For the partial breach involved in the delay or in other existing non-performance, money damages will be awarded along with the decree for specific performance.

12 CORBIN ON CONTRACTS § 63.23 (rev. ed. 2012) (emphasis added). When the trial court awards this remedy due to the breaching party's delay, the award "enforce[s] the equities of the parties in such a manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract." *Heritage Hous.*, 674 S.W.2d at 366.[4]

### III. Analysis

We agree with our courts of appeals that an equitable award of property-related expenses incurred due to the breaching party's delay in

---

[4] The *Restatement* is in accord. *See* RESTATEMENT (SECOND) OF CONTRACTS § 358 cmt. c (AM. L. INST. 1981) ("In addition to any equitable relief granted, a court may also award damages or other relief. Since an order seldom results in performance within the time the contract requires, damages for the delay will usually be appropriate."); *see also* 71 AM. JUR. 2D *Specific Performance* § 231 (2023) ("The defendant who performs the defendant's contractual obligation only after a court has ordered the defendant to do so has not timely complied with the contract, and if a delay in performance causes injury to the plaintiff, it is proper to award damages as compensation for injury resulting from the defendant's late performance."); 25 WILLISTON ON CONTRACTS § 67:32 (4th ed. 2002) ("[A] court sitting in equity may award monetary compensation in addition to specific performance where necessary to effectuate full and complete relief, to place the injured party in the position it would have occupied had there been no breach of contract.").

performing is recoverable alongside specific performance in limited circumstances.[5] In announcing this rule, we do not alter the centuries-old principle that specific performance is an alternative to legal damages. *See Hays St. Bridge Restoration Grp.*, 570 S.W.3d at 707. Nor will this rule allow a plaintiff to circumvent the one satisfaction rule. *See Mendez*, 555 S.W.3d at 106–07 ("Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000))). This is so because the expenses recoverable are not coextensive with damages available at law for breach of contract. Rather, the equitable monetary award is more limited in nature. *See Goldman*, 414 S.W.3d at 361–62 (observing equitable award is available only "in narrow circumstances"). In this case, White Knight may recover only those expenses that are directly traceable to the delay, foreseeable, commercially reasonable, and incurred in connection with its care and custody of the Simmons property.

Here, the trial court ordered the Simmonses to specifically perform the buy-back obligation and repurchase the property. But this

---

[5] In doing so, we join several other jurisdictions recognizing a remedy of this nature. *See, e.g.*, *Guard v. P & R Enters., Inc.*, 631 P.2d 1068, 1070 (Alaska 1981); *Ellis v. Mihelis*, 384 P.2d 7, 15 (Cal. 1963); *Golden v. Frazier*, 261 S.E.2d 703, 706 (Ga. 1979); *Perroncello v. Donahue*, 859 N.E.2d 827, 832 (Mass. 2007); *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778–79 (Minn. 1977); *Derr Plantation, Inc. v. Swarek*, 14 So. 3d 711, 718 (Miss. 2009); *Hughes v. Melby*, 362 P.2d 1014, 1016–17 (Mont. 1961); *O'Connor v. Kearny Junction, L.L.C.*, 893 N.W.2d 684, 690–91 (Neb. 2017); *Matrix Props. Corp. v. TAG Invs.*, 644 N.W.2d 601, 609–10 (N.D. 2002); *Sandusky Props. v. Aveni*, 473 N.E.2d 798, 800–01 (Ohio 1984); *Parlette v. Freeman*, 543 P.2d 675, 677 (Or. 1975); *Greensleeves, Inc. v. Smiley*, 942 A.2d 284, 292–93 (R.I. 2007); *Eliason v. Watts*, 615 P.2d 427, 430–31 (Utah 1980); *Chomicky v. Buttolph*, 513 A.2d 1174, 1177 (Vt. 1986).

specific performance was insufficient to put White Knight in the position it would have occupied if the buy-back obligation had been performed as agreed. *See* 12 CORBIN ON CONTRACTS § 63.23 ("A decree for specific performance . . . is nearly always a decree for less than exact and complete performance."). A monetary award is a necessary supplement to remedy the breach by returning the parties to the positions they would have occupied had the contract been performed when performance was due. This award thus "relate[s] the performance back to the contract date [and] equalizes any losses occasioned by the delay by offsetting them with money payments." *Heritage Hous.*, 674 S.W.2d at 366. It allows the contract to be enforced retrospectively, and the compensation is "incident to [the] decree for specific performance and does not amount to legal damages for breach of contract." *Goldman*, 414 S.W.3d at 362.

Because the award of specific performance does not render an equitable monetary award categorically impermissible, we conclude the court of appeals erred by reversing the entire award based solely on the trial court's label of "actual damages/consequential damages" without substantive analysis of its components. *See Byram v. Scott*, No. 03-07-00741-CV, 2009 WL 1896076, at *4 (Tex. App.—Austin July 1, 2009, pet. denied) (examining the "economic substance" and "economic effect" of a monetary award to characterize it as an equitable delay cost, even though the parties characterized it as "lost rentals"). The trial court's findings of fact and conclusions of law support a conclusion that a portion of the award was intended to account for the delay in

12

performance and to adjust the equities accordingly rather than to award legal damages precluded by the equitable award of specific performance.

Having determined that an equitable monetary award of *some* amount was both permissible and supported by the trial court's findings, we address the proper scope of such an award. One basic principle cabining an award of equitable expenses is that the expense must result from and be directly traceable to the breach and resulting delay. *See Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (noting damages must be "directly traceable to the wrongful act and result from it"); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (same). This principle necessarily precludes recovery of any expense the nonbreaching party would have incurred even if performance had been timely. *See USX Corp. v. Union Pac. Res. Co.*, 753 S.W.2d 845, 856 (Tex. App.—Fort Worth 1988, no writ) (rejecting recovery of an expense that "would have been incurred by [the plaintiff] regardless of [the defendant's] breach"). Applying this principle here, any expenses White Knight incurred before performance was due (and therefore before the breach), such as property tax and interest incurred before the Simmonses' deadline to repurchase the property, are not caused by the breach and therefore unrecoverable. *See Heritage Hous.*, 674 S.W.2d at 366 (reversing the portion of an award incident to specific performance for costs incurred before the breach).

Next, the expenses must have been reasonably foreseeable at the time of contracting—i.e., "in the contemplation of both parties at the time they made the contract." *Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894, 901–02 (Tex. 2011) (quoting *Hadley v. Baxendale*,

13

9 Exch. 341, 354, 156 Eng. Rep. 145, 151 (1854)). The foreseeability inquiry tests whether the breaching party would have foreseen the type or category of expense the nonbreaching party would incur, not necessarily its *amount*. *See Am. Akaushi Ass'n v. Twinwood Cattle Co.*, ___ S.W.3d ___, 2025 WL 450750, at *35 (Tex. App.—Houston [14th Dist.] Feb. 11, 2025, no pet. h.) ("Uncertainty as to the *amount* of legal damages is permissible, while uncertainty as to the *fact* of legal damages is fatal to recovery." (emphases added)). Here, the Simmonses reasonably could foresee that White Knight would be responsible for paying property taxes on the Simmons property after the time for performance given the Simmonses' refusal to repurchase, even if the applicable tax rate and total amount owed were not known. But other expenses included in the monetary award—e.g., interest paid on loans to continue business operations and property tax paid on properties other than the one that was the subject of the repurchase agreement—were far more attenuated, unforeseeable, and thus unrecoverable.

When line-drawing regarding foreseeability proves difficult, helpful guidance may be gleaned from the Uniform Commercial Code's definition of "incidental damages" that a seller (who, like White Knight here, must hold property for longer than anticipated by the contract) may recover upon the buyer's breach. Under the UCC, a seller's incidental damages include commercially reasonable expenses incurred in the care and custody of goods after the buyer's breach. TEX. BUS. & COM. CODE § 2.710; *see USX*, 753 S.W.2d at 855 (observing that Section 2.710 "was intended to cover only those expenses contracted by the seller after the breach and occasioned by such things as the seller's

14

need to care for, and, if necessary, dispose of, the goods in a commercially reasonable manner"). Though parts of this definition, which contemplates transactions involving goods, would not apply to a sale of real property, some of its considerations are appropriate in fashioning an award of compensation incident to specific performance. Indeed, our courts of appeals have long employed the same concepts in shaping the contours of monetary awards. *See Supply Pro, Inc. v. Ecosorb Int'l, Inc.*, No. 01-15-00621-CV, 2016 WL 4543136, at *9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, pet. denied) ("[T]he phrase 'commercially reasonable and necessary charges' can be commonly understood to refer to charges that are fair, proper, or moderate in the context of an exchange of goods and services and are essential, indispensable, or requisite." (cleaned up)); *Smallwood v. First State Bank of Ovalo*, 211 S.W. 474, 475–76 (Tex. App.—El Paso 1919, no writ) (explaining that, after buyers of cattle wrongfully repudiated and left cattle in the seller's possession, any necessary and reasonable costs incurred by the seller in feeding, watering, and caring for the cattle are recoverable).[6]

Besides the UCC's definition of "incidental damages," cases from our courts of appeals awarding expenses incident to specific performance yield helpful insights for evaluating foreseeability. For example, in *Claflin v. Hillock Homes, Inc.*, the court of appeals affirmed

---

[6] *See also Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722, 727 (Me. 1983) ("[W]e cannot read the phrase 'commercially reasonable charges, expenses or commissions' as including wholly hypothetical charges that a seller would assert as arising out of the use of his own funds to pay off a loan."); TEX. BUS. & COM. CODE § 9.627(b) (outlining factors to consider when determining whether a disposition of collateral is "made in a commercially reasonable manner").

15

an award of specific performance to the home builder along with "the carrying charges—the interest paid by [the builder] on its interim building financing between the date of the breach and the [lawsuit]—on the original building construction loan" after the defendant refused to purchase a home it contracted to buy. 645 S.W.2d 629, 635 (Tex. App.—Austin 1983, writ ref'd n.r.e.). The builder had planned on paying off the loan with the proceeds of the sale, *id.* at 632, and "presented evidence that it was virtually impossible to rent the home because there was no rental market for the residence," *id.* at 636.

In *Byram*, after the seller wrongfully refused to convey real property, the purchaser, a lessee in possession of the property, obtained both specific performance and reimbursement for the rent he paid to use the property during the delay period. 2009 WL 1896076, at *1. The rental payments—which the plaintiff incurred due to the defendant's failure to convey the property—were recoverable (similar to a seller's "care and custody" expenses) because the plaintiff was required to pay rent to avoid eviction. *See id.* at *4–5.

Conversely, the court of appeals in *Shafer v. Gulliver* reversed an award reimbursing the purchasers for lost interest on their earnest money payments, closing fees, and closing payments. No. 14-09-00646-CV, 2010 WL 4545164, at *9–10 (Tex. App.—Houston [14th Dist.] Nov. 12, 2010, no pet.). The court reversed because the compensation recovered—"[l]ost interest from what [the purchasers] should have earned on their money"—"does not fall within those categories of damages a party may recover in addition to specific performance." *Id.* at 10.

\*     \*     \*

We conclude a trial court does not abuse its discretion by awarding an equitable monetary award (regardless of its label) alongside a decree of specific performance for breach of a contract for the sale of real estate so long as the monetary award is necessary to place the parties in the same position as if the contract had been performed in full and on time. Each category of expenses awarded must be (1) directly traceable to the defendant's delay in performance, (2) foreseeable at the time of contracting, and (3) commercially reasonable. When, as here, the nonbreaching seller is in possession of the land during the delay, any expense awarded must also be incurred in connection with the care and custody of the particular property in dispute.

We reserve for another day the question of this rule's precise application and potential refinement of its requirements in cases involving different facts. When those cases do arise, we trust our trial courts and courts of appeals to faithfully apply the equitable principles announced today in fashioning and reviewing such a remedy.

## IV. Conclusion

The court of appeals erred by reversing the monetary award without addressing whether any portion of it was warranted. Accordingly, we reverse the court of appeals' judgment in part and remand the case to that court to review the award under the principles we announce today.

Rebeca A. Huddle
Justice

17

**OPINION DELIVERED:** June 13, 2025